## CAMMACK et al. *v.* WATSON et al.

The action given to a creditor by sect. 7, ch. 3, tit. 4, book 3, (arts. 1963 to 1989), of the Civil Code, to avoid contracts made to his prejudice by a debtor—the *Actio Pauliana* of the Roman law, is prescribed by one year, to be counted, if brought by a creditor individually, from the time he obtained judgment against his debtor—if by a syndic, or other representative of the creditors collectively, from the day of his appointment.  The object of this action is to set aside contracts made with the consent of the parties and having a real existence, but which the law will not permit to be an impediment to the recovery of the creditor's debt, unless he shall be presumed, from lapse of time, to have waived his right to have them avoided.  There is no similarity between this action and the action to have a simulated sale decreed to be such.  The latter is not barred by the prescription established by art. 1989.  Sect. 7, ch. 3, tit. 4, book 3, of the Civil Code, does not relate to simulated or pretended agreements

CAMMACK<br>v.<br>WATSON.

APPEAL from the District Court of Concordia, *Curry*, J. *Walker*, one of the defendants, appealed from a judgment, rendered on the verdict of a jury, in favor of the plaintiffs.

The judgment of the court was pronounced by

EUSTIS, C. J,[*] The plaintiffs, at April term, 1839, in the District Court of Concordia, obtained judgment against one of the defendants, *Watson*, for $10,000, with interest and damages. It was had on a judicial confession, in a suit which had been instituted against him as drawer of a bill of exchange. An execution was issued, and returned *nulla bona*, on the 20th of May, 1840.

On the 19th of May, 1841, the plaintiffs instituted this suit, in which they charge that *Watson*, on the 14th day of December, 1837, made a pretended sale of all his property in the parish of Concordia, where he resided, to his son-in-law, *Samuel D. Walker*, then, and at the time of the suit, residing in Arkansas; that said sale was false, fraudulent and simulated, made for the purpose of defeating the just claims of the plaintiffs and other creditors, without any price or real consideration, and unaccompanied even by a change of possession from *Watson* to *Walker*. They pray that the sale be avoided and annulled by the judgment of the court, and the property thus included in this frauduldnt instrument be decreed to be subject to be seized and sold in satisfaction of their debt.

The jury found " that the sale from *J. Watson* to *Samuel D. Walker* was fraudulent and of no avail," and gave a verdict for the plaintiffs according to the prayer of the petition.

The debt to plaintiffs was contracted in 1835; at that time *Watson* was the owner of the plantation and slaves, which are the subject of the present suit.

At the October term of 1844, in the Western District, the late Supreme Court reversed the verdict of a jury,[†] and subjected this plantation and slaves to the payment of two judgments of large amounts, obtained by the Planters' Bank of Mississippi against *Watson*, on the ground that the sale in question was fraudulent and simulated. *Vide* 9th Robinson, 267. A rehearing was granted, and during its pendency, the suit was compromised. All the evidence adduced in that case was received in this, and additional evidence was produced which puts the simulation and turpitude of the whole transaction beyond all reasonable doubt.

The defendants contend that this action is prescribed by the lapse of one year from the time the creditor had obtained his judgment against his debtor, under article 1989 of the Civil Code.

It is true that the revocatory action—the *Actio Pauliana* of the Roman law, is prescribed by one year from the date of the judgment obtained by the creditor, or of the appointment of representatives of all the creditors in case the suit is instituted by them. But this action is given to enable the creditor to avoid *contracts* made to his prejudice. Such is the very word of the titles to the sections, paragraphs and articles of the Code which treat on the subject. Vide section 7, § 1 and 2, articles 1963 to 1989. Its object is to set aside contracts upon which the consent of the parties has operated and which have a real existence, but which the law will not permit to be an impediment to the recovery of the creditor's debt, unless he shall be presumed, from lapse of time, to have waived his right to have them avoided.

---

[*] By consent of parties the judgment in this case was pronounced in New Orleans. The appeal was returnable at Alexandria, in the Western District.

[†] In the case of *The Planters' Bank of Mississippi* v. *Watson et al.*

CAMMACK           Article 1965 gives the right to the creditor to annul *any contract* made in
  *v.*          fraud of his rights.   Art. 1972 declares that the judgment shall be that the
WATSON.         *contract be avoided, &c.*   Article 1977 provides for the *restitution of the money*
paid by the party with whom the debtor *contracted*, in the event of its having
inured to the benefit of the creditors.   The next article, 1978, makes provision
where the consideration is a pre existing debt, and article 1983 where it is a
debt not at the time demandable.   Article 1984 mentions other classes of con-
tracts which are subject to the revocatory action, viz : the renunciation of a suc-
cession or other right of property, the release of a debt without payment, or
any other act of this kind when done to the prejudice of creditors—these may
be avoided by them, under the rules provided.   By article 1985 creditors are
authorized to accept a succession, which the debtor neglects, or refuses to ac-
cept.   Other articles provide for those rights which creditors cannot reach,
even if the debtor should refuse to avail himself of them—such as the separa-
tion of property, donations made to the debtor which he does not accept, the
right which the debtor has to make his co-heirs collate, and certain other privi-
leges which are strictly personal.   Arts. 1986, 1987.

The sense of the Code is therfore unquestionable.   It provides for the *avoid-
ance of contracts*.   It has no reference, or application, to *simulated* or *pretended*
agreements.   On the contrary, the words do not occur throughout the whole
section, which treats on the subject of contracts to be avoided by persons not
parties to them.

But it is said that article 1975 presumes the gratuitous contract made by
the creditor to be fraudulent *ab initio*, but still the creditor would lose his right
to avoid it unless he brought his action within the year.   This is true.   But a
gratuitous contract is not the less a contract on account of its being gratuitous.
The consent necessary to a donation is as true and real as to a contract of sale.
One of the divisions of *contracts* established by our Code is that, of onerous
and gratuitous contracts.   Arts. 1765, 1766.

We have examined this subject according to the provisions of our Code,
which are too clear and express to leave any doubt as to their legal intendment,
There is no necessity of going beyond it.   But a reference to the Roman law,
from which this whole section was taken, fortifies the conclusions to which we
have arrived after a thorough consideration of the subject.

Petenda est preferendaque hæc actio intra ut em annum, i. e. quadriennium
continuum, ex eo scilicet computandum quo *venditio* facta est.   Qua vero ex
parte locupletior quis debitoris fraude factus est, in *perpetuum* competit actio.
Doctrina Pand. by Muhlenbruch, § 174.

There is no similarity between the revocatory action here spoken of, which
is the same as that provided for in our Code, and the action to have a simulated
sale decreed to be so.   As Merlin says : On se pourvoit contre un acte simulé,
par une simple demande à ce qu'il soit declaré tel.   Rep. de Jurisprudence,
*verbo* Simulation.

Is this a *contract* in any rational sense. which has been thrown as a net
over the property of this fraudulent debtor, by his son-in-law and accom-
plice ?   Was it a contract of *sale?*   Was there a consent given that the pro-
perty should cease to belong to *Watson*, and thenceforth belong to *Walker?*.
Was there a price paid ?   Was there a delivery?   There was not one of these ;
nor is there one word of truth or sincerity in the whole transaction from the
beginning to the end.   We have no taste for the details of such affairs.   Those

who have can gratify themselves, in the report of the case before cited, in 9th Robinson. We have seen enough to satisfy us that the plantation and slaves never ceased to belong to *Watson,* who alone received the revenues of them. It is most obvious that, in a case like this, there is no basis on which prescription, or any other right adverse to the creditor, can rest. There is no possession—no consideration—no reality in it. The whole is a mere fiction, and the instrument itself is proof of nothing, except the folly and bad faith of those who put their names to it.

The jurisprudence of this State in relation to instruments of this kind is settled. Since the rule laid down in the case of *Hiriart* v. *Roger et al.,* 13 La. 129, we are not apprized that there are any decisions which controvert it. It was established after much deliberation ; and we believe is correct in principle, and that every reason of policy and public morals require it to be adhered to. See Civil Code, art. 2456. 17 La. 306. Merlin, *loco cit.*

In a recent case we lately determined that simulation gives neither possession nor title, and that no act of the parties to a simulated sale can be recognized as affecting the rights of creditors to the property of their debtor.

*Bernard* v. *Auguste, ante* p. 69. This opinion is in conformity with that of Baldus, Dumoulin, and other distinguished civilians. The subject can hardly be made more clear by further illustration, and we affirm the judgment of the District Court, with costs in both suits.

*Lockett* and *Micou,* for the plaintiffs. *Dunbar, Stacy* and *Sparrow,* for the appellant.