## No. 11,983.

### EUZEBE LELEU ET AL. VS. MRS. ELIZABETH DOOLEY.

An attack upon a *dation en paiement* from a husband to his wife, made by a plaintiff on the ground that it was in fraud of his rights as a forced heir of the vendor and an absolute nullity, because a disguised donation fails where the price paid was actually due by the husband to the wife, and it was not out of all proportion to the value of the thing sold, saving to the heirs of the contracting parties their rights, if there existed any indirect advantage. C. C. 2446, 2464.

Though an acknowledgment of indebtedness to his wife, made by a husband in an act of *dation en paiement* to her, is not conclusive upon one of his forced heirs, attacking as such the act as a disguised donation, executed in fraud of his *legitime*, yet some effect must be given to it in connection with the other evidence in the case in determining the reality of the indebtedness when plaintiff in the suit declares that he accepts unconditionally the succession of his father.

APPEAL from the Nineteenth Judicial District Court for the Parish of Iberia. *Voorhies, J.*

*L. T. Dulany* and *A. & C. Fontelieu* for Plaintiffs, Appellants.

———

*L. F. Hacker* for Defendant, Appellee.

———

Submitted on briefs January 7, 1896.
Opinion handed down February 24, 1896.

———

The opinion of the court was delivered by

NICHOLLS, C. J. The plaintiffs, two sons of Onezime Leleu, aver that their father died in the parish of Iberia on the 25th of January, 1894, leaving twelve children as his legitimate and legal forced heirs. That their father was twice married; that they and three others are the issue of the first marriage, while there are seven who are the issue of the second marriage with Elizabeth Dooley.

That on the 15th August, 1879, their father made a pretended *dation en paiement* to his second wife, the present defendant, of all the property of which he was the owner, which property they describe in their petition as a tract of land in the parish of Iberia containing sixty-two 25-100 acres, more or less, with given boundaries; that the pretended *dation en paiement* was made for five hundred dollars; that at the date the same was made the property was worth, and it is still worth, at least twenty-two hundred dollars; that their father died possessed of no property other than that included in the *dation*. That the pretended act of *dation* is but a fraudulent simulation and a donation in disguise to his second wife in order to deprive petitioners of their *legitime* in their father's estate; that said act is a fraudulent simulation, because their father never received any money from the defendant, and did not owe her the sum of five hundred dollars, because the property was worth more than four times the sum of five hundred dollars, and the object of the act was to defraud petitioners of their *leqitime.*

That the pretended *dation* is but a donation in disguise to a second wife in violation of law and to defraud petitioners of their *legitime*, because there was nothing due by their father to defendant, who was always very poor and without means, and because the act is lacking the necessary formalities for a *dation en paiement*. They aver that their father died owing no debts and they declare they

accept his succession unconditionally. They pray that they be decreed forced heirs of their father, and that the pretended act of *dation en paiement* be decreed a fraudulent simulation and donation in disguise, in violation of law, and absolutely null and void, and decreeing the property to belong to the estate of their father and recognizing petitioners as co-owners of one-sixth of the same and placing them in possession.

Defendant excepted that plaintiffs' petition disclosed no cause of action, and that they are estopped by the positions which they assumed in their pleadings. The exception was referred to the merits. Defendant answered, pleading first, a general denial, averring that her husband was justly and legally indebted to her in the sum of six hundred and seventy dollars, money belonging to her and received by him during her marriage and by him used and expended for his own use and benefit, and that in part payment or replacement to her of her said paraphernal property he transferred to her by *dation en paiement* the property described. That she acquired the same in good faith for a just consideration, and that at the date of said transfer the property was not worth more than five hundred dollars. That at his death her husband left seven children, issue of their marriage, the youngest of whom is eight years of age; that he left no property or means whatever, and that she has no other property than that mentioned, and generally denying all the allegations of plaintiff, and substantially pleading in bar of plaintiffs' action the prescription of one, two, three, five and ten years.

The court rendered judgment in favor of defendants, and plaintiffs appeal.

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiffs in their brief say that the District Court based its opinion upon the conclusion that the wife did owe the defendant some amount; that the action was simply *en declaration de simulation*, and, therefore, as there was some consideration for the transfer, although inadequate, the act was real and not simulated, and plaintiffs had not made out their case, and that the court basing itself on the case of Henshaw vs. Dowty, 39 An. 608, erroneously held that it was incumbent upon plaintiffs to prove that there existed no consideration for the transfer. They say the judge utterly ignored the question of the value of the property, giving his

attention exclusively to that of indebtedness on the part of the husband to the wife. They urge that the court confounded the law applicable to the case of a creditor attacking the transfer made by his debtor as a simulation with the case at bar, where the act is attacked as a disguised donation. That while the disguised donation is in reality a fraudulent simulation, it differs essentially from that simulation where no contract is intended. In the one case no real contract is intended by the parties, and the act is but the paper mask to screen the property from the creditors. In the other a real transfer of the property is intended, and a pretended obligation on the part of the husband toward the wife is alleged in order that an act prohibited by law may be masked under the form of one that is permitted and approved. They contend that the *dation en paiement* by the husband is, in this case, a disguised donation; that the husband did not owe the wife at all, or if he did, he owed less than alleged. The husband transferred to the second wife all the property owned by him for one-third of its real value. That the husband knew that he had five children, issue of a former marriage, and in view of Art. 1752 Civil Code he could not dispose of all his property in favor of his wife or the children of the second marriage, either by last will or donation *inter vivos*. That the husband died leaving no other property, and leaving the children of the first marriage penniless, while the second wife became the owner of the whole estate, her children the prospective beneficiaries. That when the husband attempted to evade the law as laid down in Art. 1752, the transfer was absolutely null. They cite in support of their position Succession of Ames, 33 An. 1330, and Scott vs. Briscoe, 37 An. 178, and rely upon Lovell vs. Payne, 30 An. 511, as establishing that the burden of proof to sustain the consideration of the transfer was upon the defendant.

Article 1752 of the Civil Code declares that a man or woman who contracts a second or subsequent marriage, having children by a former one, can give to his wife, or she to her husband, only the least child's portion, and that only as a usufruct, and in no case shall the portion of which the donee is to have the usufruct exceed the fifth part of the donor's estate.

Art. 1754 declares that " husbands and wives can not give to each other indirectly beyond what is permitted by the foregoing dispositions." (Those of Arts. 1752 and 1753.) " All donations disguised or made to persons interposed shall be null and void."

In the matter of the heirs of Casanova vs. Acosta *et al.*, 1 La. 185, plaintiff's father was possessed prior to his marriage of a certain lot of ground. The father in his will declared that all his property was acquired during the marriage, and community property. Plaintiffs contended that this was a disguised donation to the wife, and as such null and void, but that if not absolutely null and void, it was reducible. On appeal this court said: "The next question is the correctness of the judge's opinion that the declaration in the statement of the house and lot being common property amounted to a donation to the wife, which was not void, but reducible to the portion he might have given to her directly. The 228th article (of the old Code) provides that husband and wife can not give to each other indirectly beyond what is permitted by foregoing dispositions which permit them to give directly— und then proceeds to say that all donations disguised or made to persons interposed shall be null and void. By the first clause a violent presumption is raised—the law intended they might give indirectly to a certain amount, and the second would appear to positively prohibit it. It is difficult to make a satisfactory distinction between indirectly giving and a disguised donation. Indeed, were it not for a subtle distinction existing in the Roman law on the subject, and in reference to which we presume this legislation was made, we do not see any difference in the meaning of the two expressions. But the Roman jurists distinguished: according to them if the advantage conferred grew out of or was incident to a real contract which had not exclusively for its object the bestowing an advantage on one of the spouses it was reducible, but if the agreement was entirely simulated and had in view alone the conferring a benefit on husband and wife it was null and void. In the instance before us the declaration of the husband that the property was common, when and in truth it belonged to him before marriage, can be regarded in no other light than made in the sole view of conferring an advantage on his wife as distinguishing a donation, and we, therefore, conclude it was null and void. Pothier Contrat des Donations, Vol. 2, Cap. 2, Art. 1, No. 78; Digest, Lib. 24, Tit 1, Law 5, Sec. 5.

That case was followed by Thibodeaux vs. Herpin, 6 An. 673, in which a wife sought to have declared null and void a sale made by her to one Victor Herpin on the ground that it was a disguised

donation to her husband, Francois Herpin, through the apparent vendee as an interposed person. . In deciding the case the court after citing Art. 1747, C. C. (now Art. 1754), said: "That article contains two separate dispositions—one by which the spouses are incapacitated from giving to each other more than the law permits, in which case the excessive donation is reducible, and the other declaring null and void all donations disguised or made to persons interposed. This distinction of reducible donations between husband and wife and donations which are null and void on the ground of interposition or disguise came to us from the Roman law." The court referred to the decision in Casanova's heirs and the citations therein made, adding: "It is also recognized by the French commentators under a similar disposition of the Code of France. (5 Toullier, Nos. 76, 83, 901 and 902.) The second paragraph of Art. 1747 creates an absolute incapacity between husband and wife to make to each other disguised donations or donations to a person interposed, and if they do so the donation is null and void. This nullity being considered by jurists as absolute may, in all cases, be invoked by the contracting parties or their heirs." (7 Toullier, No. 558.)

In the matter of the succession of Ames, 33 An. 1328, the forced heirs of Mrs. Ames (claiming additionally as assignees of certain special legatees) contested, as null and void, a claim made by her second husband, Hugh Ames, based upon the following declaration in the will of the deceased: "I owe my husband ten per cent. on my share of all the collections which he has made for account of the property and succession of Thomas Hale." Referring to the claim the court said:

"Much reflection has failed to indicate to us any category of valid claims against the succession in which this item could be placed, except that of a debt due by the deceased or a donation *mortis causa.*"

Discussing it from the standpoint of being a debt, it declared the solution of the question an easy one, as it was clear that upon elementary principles that in the relation of husband and wife, subsisting between them, the services of Mr. Ames, referred to in the will, could not, either by contract or operations of law, be the source of any civil obligation on the part of his wife to him. Considering it in the light of a donation, it held it was not sustainable in view of the provision of Arts. 1752 and 1754 of the Civil

33

Code, which has been declared as applicable to testamentary donations as to donations *inter vivos*. (Depas vs. Riez, 2 An. 30.) The court rejected the contention made on behalf of the husband that it might be upheld as being a remunerative donation for reasons assigned by it in its opinion. Passing to the consideration of the provision of the will as a donation proper it said: " It is urged that as a donation it would not be null, but only reducible to the usufruct of one-fifth of the estate which the law permits to be given to the second spouse. Such is not the case. If a donation at all, it is unquestionably a disguised donation. It does not by its terms purport to be a donation, but is disguised under the form of an acknowledged debt. Being a disguised donation, it is not merely reducible, but is struck with absolute nullity by the express terms of Art. 1754, which declares that all (such) donations, disguised or made to persons interposed shall be null and void. If this were to be held to mean that they were reducible merely, the clause would be without any effect. Every donation exceeding the amount permitted by law is necessarily reducible, and it would be useless separately to predicate that fact of a disguised donation. The law makes a distinction between avowed and disguised donations, and while the former are reducible merely, it declares that the latter are null and void. The motive of the legislator is apparent—to prevent by such severe penalties all attempts to evade or perpetrate frauds upon the law. The point, however, has been already decided by this court. Thibodeaux vs. Herpin, 6 An. 673; Casanova's Heirs vs. Acosta *et al.*, 1 La. 179. See Commentaries on this article of Toullier, Grenier, Troplong, Delvincourt, and others. Difficult questions which might arise as to whether this nullity is available to any but the children of the first marriage, and as to whether, in a case like the one at bar, the nullity would enure to the benefit of those children or of the universal legatees, are shut out in this case by the confusion of the qualities of the children and the legatees in the same persons."

The syllabus in the case of Scott vs. Briscoe, 37 An. 178, to which case our attention is directed by appellants, declares that none but creditors and forced heirs can attack the acts of an owner of property fraudulently alienating it. That Art. 1754 of the Civil Code is applicable only to spouses who have forced heirs, and through the nullity of donations disguised or made to persons interposed is absolute in

the sense that they are not reducible merely, but wholly null, it is only relative to forced heirs, and can not be invoked by simple collateral heirs. In the body of the decision the court said: "Briscoe had no children and no forced heirs. There was no limit as to his power of disposition of his property, saving the rights of creditors. He had the power to give to his wife all that he could to a stranger. C. C., Art. 1746. He had the capacity to give to her, and she to receive from him, his whole estate, without in any manner infringing the rights of this ordinary collateral heir. If it was his intention to give, it was a thing lawful in itself, operating no fraud upon any provision of the law, and he had the right to select the mode of doing so. If he had received the title directly from Mrs. Gregory and then donated it to his wife, neither plaintiff nor any one else save creditors would have had the right to complain. If to avoid circuity he had the title made directly to her, no law was violated and no injury done to plaintiff. We have not noticed the references made to Art. 2446, C. C., prohibiting sales between spouses save in certain cases, because from no point of view can this be regarded as a sale from Briscoe to his wife."

In the case at bar the plaintiffs who seek to have declared the nullity of the act between Leleu and his wife seek to do so as "forced heirs" of the vendor, but declaring that they accept his succession unconditionally. The act attacked is, in form, an act of sale or *dation en paiement* based upon the second paragraph of Art. 2446 of the Civil Code. Art. 2446 says: "A contract of sale between husband and wife can take place only in the three following cases:  *   *   *

"When the transfer made by the husband to his wife, though not separated, has a legitimate cause, as the replacing of her dotal or other effects alienated."   *   *   *

"Saving in these three cases to the heirs of the contracting parties their rights, if there exist any indirect advantage."

The consideration of the sale in this case is stated to be five hundred dollars, the vendor declaring that " he was indebted to his wife " in that sum, as '" being amount due her and received by him since his marriage with her on the 11th October, 1866."

The first question before us is whether this apparently onerous contract is a disguised donation. Laurent, in his work on Donations and Testaments (Vol. 12, Sec. 302), says: " Il y a des donations par

contrat onéreux dont la validité n'est pas douteuse. Lorsque le vendeur, dit Pothier, veut gratifier l'acheteur, en stipulant un prix qui est audessous de la valeur, cela n'empêche pas que le contrat ne soit une vente. Or, la vente est un contrat non solennel; donc la libéralité sera valable quoique faite sans solennité. Quelle en est la raison? Se je vends pour cinquante mille francs un domaine qui en vaut cent mille, je fais une libéralité de cinquante mille francs; porquoi cette libéralité est-elle dispensée des formes qui la loi prescrit comme condition d'existence des donations? Pothier avoue que le contrat qui renferme un avantage pour l'acheteur, dans le but de le gratifier, n'est pas purement et entièrment une vente; c'est un contrat d'une nature mixte, qui tient quelque chose de la donation; si on le considere ccomme une vente, c'est que la principale intention des parties contractantes a été de faire une vente plutôt qu'une donation.

Laurent declares this proposition a doubtful one and gives reasons for his doubts, but he says: "Nous addressons l'objection au *législateur*; pour *l'interprète*, il n'y a aucun doute, puisque la tradition est constante. Et le code la confirme; aux termes de l' article 1595 (our Art. 2446), la vente entre époux est permise dans trois cas. Si tout en faisant une vente autorisée, l'époux vendeur gratifie l'acheteur, en lui cédant pour cinquante mil francs un immeuble qui en vaut cent mil, le contrat ne cessera point d'être une vente, sauf, dit loi, le droit des heritiers, c'est-à-dire des reservataires qui pourront desmander la réduction de cet avantage indirect. Voilà bien une liberalité tout ensemble et une vente; et l'acte est maintenu comme vente.

The author then takes up the case where property worth one hundred thousand francs was declared to have been sold for that sum, and that sum paid, when, in point of fact only fifty thousand francs were paid. Of this he says: "Il y a, dans ce cas déguisement, simulation; mais la simulation par elle seule, n'est pas une cause de nullité; il faut, pour qu'elle rende l'acte nul, qu'elle fasse fraude à la loi. Or, nous supposons que le vendeur est capable de donner et que l'acheteur est capable de recevoir à titre gratuit. Il n'y à donc pas de fraude aux règles qui régissent la capacité. Y a-t-il fraude èn ce qui concerne la forme? Pas davantage. Il est vrai que l'Article 893 semble exiger que toute libéralité entre-vifs se fasse dans les formes solennelles; mais dans l'espèce il ne s'agit pas d'une

donation, l'acte est une vente, et cette vente est valable, quoique faite endessous du prix.    Dira-t-on qu'il y a fraude aux règles qui concernent le rapport et la réduction? Nous examinerons plus loin la question de savoir si le contrat onéreux est nul quand les parties ont eu le dessein de soustraire la libéralité au rapport ou à la réduction.    Dans l'opinion généralement admise, l'acte n'est pas nul, les héritiers sont admis a prouver qu'il a libéralité déguisée, et si la preuve est faite l'avantage sera sujet à rapport et à réduction.    Tout ce qui résulte du déguisement c'est qu'il sera plus difficile d'établir l'existence de la libéralité.    En ce sens on pourrait dire que toute libéralité déguisée est frauduleuse, et le législateur aurait pu la frapper de nullité.    A notre avis-il aurait du le faire.    Il ne faut pas que le législateur autorise et encourage en quelque sorte les parties intéressées a éluder la loi.    Il veut que toute libéralité soit sujette à rapport et a réduction.    Et voilà que le donateur et le donataire entravent sa volonté dans une intention plus ou moins frauduleuse. Ne découvre-t-on pas la simulation? la loi est éludée; résultat funeste, puisqu'il ruine le respect que les citoyens doivent a la loi. Que si l'on découvre la simulation, ceux qui ont essayé d'éluder la loi n'ont rien à risquer, la libéralité sera maintenue dans les limites du disponible; l''on va même jusqu'à la dispenser du rapport.''

Article 1099, C. N., of the French Code, which corresponds with our Art. 1754, says: '' Les époux ne pourront se donner indirectement au delà de ce qui leur est permis pas les dispositions ci dessus. Toute donation ou déguisée ou faite à personnes interposées sera nulle.''

It will be seen from the quotations we have made that in spite of Laurent's opposition to the jurisprudence on the subject of disguised donations, he none the less acknowledges that the matter has gone beyond the reach of courts and that if a remedy has to be applied it can only be accomplished through the Legislature.    We need not follow him into his further discussion of this subject, as we do not think this case calls for it.

The act attacked, as we have said, is authentic in form, as evidencing a sale, in which the vendor, the husband of the vendee, acknowledges himself to be indebted to the latter in the sum of five hundred dollars.    We are of the opinion that even were the property which was sold of greater value than five hundred dollars, the act will have to stand as an act of sale.    The case would be, at best,

one not of simulation, but of indirect advantage to the wife, not carrying as a consequence, absolute nullity. We do not think the case covered by either Article 2444 or 2464 of the Civil Code. Plaintiffs contend that not only was the property of greater value than the price declared to have been given for it, but that there was no price at all, as the husband was not indebted to his wife. They claim that the burden of proof was on the wife to show positively not only that the husband owed her, but also the precise amount of the indebtedness. The wife holds under an executed contract. She is sought to be deprived of her rights under this contract by parties presenting themselves as unconditional heirs of their father, as plaintiffs in a demand in which they seek to contradict his recitals in the act. We find two cases where the burden of proof was thrown upon the party advancing a claim acknowledged to be due by a deceased person, where the defence set up was that the claim was a disguised donation, to sustain the consideration of the claim, but in both cases the claims were evidenced by promissory notes and executory. (Heirs of Cole et al. vs. Cole's Executors, 7 N. S. 423, 424; Thibaut vs. Thibaut's Heirs, 1 La. 495.) The case of Succession of Bernard Fox, 2 Rob. 292, was one of testamentary acknowledgment, also of an executory claim. In the case of Moore vs. Wartelle, 39 An. 1067, this court, citing Art. 2444 of the Civil Code, said: "The sales of immovable property made by parents to their children may be attacked by the forced heirs as containing a donation in disguise, if the latter can prove that no price was paid, or that the price was below one-fourth of the real value of the immovable sold at the time of the sale. The law does not favor action by forced heirs to undo transactions of their ancestors as done in fraud of their rights. The burden is upon them, and in the absence of convincing proof, and in the presence of evidence which merely casts a suspicion, the court will not take the property of one man to give it to another. The law does not in proper cases leave the heirs without relief." It cited in support of this position Laycock vs. Bird, 13 An. 174; Montgomery vs Chaney, 13 An. 207; Carter vs. McManus, 15 An. 641; Succession of James Forsyth, 21 An. 367; C. C. 1324, 1326.

The decision in the Moore case bore, it is true, upon a contest, seeking to have a sale between parent and child set aside, while the present one is an attack upon an act between husband and wife,

as between whom the power to contract is more restricted than between father and son, but even if this difference would be such as to alter the *onus* of proof in cases generally, the present case is brought under the rule announced in the decision in 39 An., in view of the fact that the plaintiffs have accepted the succession of their father unconditionally, and his acknowledgment of indebtedness to the wife binds them, certainly, to the extent of their being *prima facie* true. The recitals of indebtedness made by the husband might not prejudice the heirs of the latter standing squarely on their rights as forced heirs (Succession of Ames, 33 An. 1329), but when they think proper to accept the position of unconditional heirs, we see no reason why the declarations of the ancestor in an authentic act should not be given weight to some extent, at least, in determining the rights of parties to an act of sale. (Brown vs. Brown, 30 An. 966; Successions of W. B. and Margaret Savory, 32 An. 506; Dopler vs. Feigel, 40 An. 850; Armorer vs. Case, 9 An. 242; Stewart vs. Mix, 30 An. 1036; Drumm vs. Kleinman, 31 An. 124; Succession of Turnell, 32 An. 1220; Heirs of Compton vs. Maxwell, 33 An. 688; Brown vs. Stroud, 34 An. 374; Kerwin vs. Insurance Co., 35 An. 33.)

The wife, in this case, went upon the stand as a witness and testified to the indebtedness due by her husband to herself. Plaintiffs call our attention specially to what they conceive to be proof positive that she was not correct in some of her statements. They say she testified that a portion of the moneys received by her husband were applied to the payment of a debt due by him to one Broussard, while the tableau in the successions of her father and mother, declared to have been the source of the moneys so applied was not filed until long after the payments to Broussard were made, but an examination of the mutilated account found in the record (the same having been partially destroyed by the destruction of the court house in Abbeyville, by fire), shows that the heirs had received a portion of their shares before the filing of the account, and, therefore, there is not the necessary inconsistency which plaintiffs allege. Plaintiffs complain that the wife did not produce as witnesses, on the trial, the different parties who turned over her paraphernal funds to her husband. It certainly would have been more satisfactory had she done so, but we can not say that, as matters stand, the judgment is not justified by the evidence. (Buford vs. Collins, 41 An. 644.)

The judgment appealed from is affirmed.