(119 So. 54)

No. 29137.

Succession of BAUMAN.

Oct. 29, 1928. Rehearing Denied Nov. 26, 1928.

John E. Harrington and Edward Barnett, both of Shreveport, for appellants.

Foster Hall & Smith, of Shreveport, for appellee.

THOMPSON, J. This is the fifth time this controversy among the heirs of Mrs. Lucy S. Bauman has been before this court.

The subject of the litigation is an undivided half interest in a certain lot situated in city of Shreveport. The land belonged to the

marital community existing between L. D. Bauman and his wife, Lucy S. Bauman.

After the death of her husband, the widow and two of her daughters brought suit against the other heirs for a partition, but before the final determination of the case in the district court Mrs. Bauman sold her community interest to her daughter Mrs. Mary J. Pennywell. The suit thereafter was prosecuted by Mrs. Pennywell, and resulted in a judgment ordering a partition by licitation. This judgment was affirmed November 12, 1923. Bauman v. George, 154 La. 680, 98 So. 85.

On January 24, 1925, Mrs. Bauman died, leaving a last will and testament, which was duly probated, and her daughter Mrs. Pennywell was recognized and confirmed as testamentary executrix.

Notwithstanding the probate of the will and the recognition of the executrix, the sheriff proceeded with the advertisement of the property for sale to effect a partition pursuant to the final decree of this court in the suit referred to supra.

Whereupon some of the heirs, and the assignees of the interest of other heirs, brought suit against Mrs. Pennywell to annul the sale made to her by her mother on the ground that said sale was a fraudulent simulation. They coupled with their suit a prayer for a restraining order, and ultimately for an injunction to prevent the sheriff from selling the property at partition sale.

The trial judge on a hearing sustained a plea of res judicata, dissolved the restraining order, and refused to issue a preliminary injunction. On application to this court the trial judge was directed to issue the injunction as prayed for. In re Bauman, 160 La. 555, 107 So. 425.

On the appeal, which subsequently came to this court, the judgment sustaining the plea of res judicata was reversed, and the case was remanded for further proceedings. Bauman v. Pennywell, 161 La. 635, 109 So. 289.

On a trial in the court below there was judgment declaring the sale by Mrs. Bauman to her daughter Mrs. Pennywell to be a simulation, and ordering the property to be returned to the succession, to be partitioned in a further proceeding and according to law. This judgment was affirmed on appeal November 28, 1927. Bauman v. Pennywell, 164 La. 888, 114 So. 723.

While the foregoing suit was pending in this court, the executrix presented to the lower court what is styled a "provisional account," containing a list of debts due by the succession, amounting to $1,919.28. There was no property and no assets placed on this account. The schedule of debts, after due publication and due proof, was approved and homologated by the court on November 23, 1927.

On the day following the decision of this court in the last-mentioned case, supra, the executrix applied to have a supplemental inventory made, which embraced the one-half interest in the lot which was ordered returned to the succession.

The interest of the succession was appraised at $9,000.

No further proceedings appear to have been taken under the judgment, which ordered the sale of the property to effect a partition.

On December 15, 1927, the executrix filed an account and tableaux of debts and distribution.

In this account the assets were placed at $9,315.07, which included the lot at $9,000. The debts listed included those mentioned in the first account, together with the additional sum of $497.75, making a total of $2,417.03.

In the petition filed with the account it is alleged that one of the heirs, Henry A. Bauman, owed his mother $300, with interest, and this amount it is asserted he should be required to collate. The prayer was that the account should be homologated, and the heirs should be ruled to show cause why the succession property should not be sold accord-

ing to law to pay the debts of the succession, as shown by the accounts.

After filing a motion to strike out and an exception of no cause of action, the opposing heirs filed an answer, in which it was admitted that the first account filed correctly stated the condition of the assets and liabilities of the succession, in so far as the assets were liable for the obligations of the succession.

It was alleged, however, that the property described in the supplemental inventory (lot 1, block 4) was brought back to the succession by virtue of proceedings taken by the respondents, and is not liable for the debts or legacies of the deceased, but must be distributed among the forced heirs in proportion to their respective interest.

The prayer was that the succession be ordered closed, the executrix discharged, and the property which was brought back to the succession be ordered placed in the possession of all of the heirs, including the executrix.

On a trial there was judgment recognizing the account as approved by the executrix and ordering the real estate to be sold by the sheriff for cash after due advertisement.

The matter of collation of $300 by Henry A. Bauman was referred to future partition proceedings.

From this judgment the opposing heirs appealed.

There appears to be no serious dispute as to the items listed on the last account as debts chargeable against the succession. The executrix approved these debts and testified to their correctness at the trial. There was no evidence to the contrary.

The real contest involves the proposition as to whether property uncovered from a simulated sale at the suit of forced heirs returns to the succession subject to the payment of the debts of the succession, or whether it goes to the heirs free from such debts.

In the suit between the same parties we affirmed the judgment, which ordered the property returned to the succession, and not to the heirs.

The same contention was made then as is made now, although presented in a different light.

It was then contended, under article 1029, Civil Code, that Mrs. Pennywell, having concealed the property from the succession, should be adjudged to have forfeited it, and it should be returned to them as the forced heirs of the decedent. This court (Bauman v. Pennywell, 164 La. 888, 114 So. 723) answered the contention as follows:

"The action en declaration de simulation having been maintained, the act complained of has no legal existence and can produce no legal effect. The title to the property is in the succession of the decedent, as if she had made no attempt to convey it prior to her death."

There has been no change in the situation since that decision, and what was then said is applicable to the contention now made.

It was, perhaps, not technically correct to have said that by the effect of the judgment the property was returned to the succession.

The title of the property never passed from the vendor to the vendee, and at the death of the vendor it passed to her succession and subject to the payment of the debts.

This court has repeatedly held that a simulated transaction has no legal effect, and no title is transferred thereby. The latest expression on the subject is in Ideal Savings Association v. Gould, 163 La. 447, 112 So. 40.

The rule is also universal to the effect that no individual creditor can obtain any advantage or claim any superior rights over other creditors on property he may have been instrumental in uncovering from a simulated sale.

The judgment in such a case inures to the benefit of all the creditors. McGraw v. Andrus, 45 La. Ann. 1073, 13 So. 630; Chaffe v. Gill, 43 La. Ann. 1055, 10 So. 361.

Prior to Act 5 of 1884 forced heirs had the

right to have the simulated contracts of their parents set aside in so far as such acts affected or impaired their légitime. But beyond this the validity of such acts remained unimpaired and unassailable. The Act of 1884, however, enlarged the remedy of the heirs and gave them the additional right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and are not restricted to the légitime.

The effect of this amendatory legislation was to put the heirs in the same situation with respect to the simulated acts of their parents as creditors occupy with respect to the simulated acts of their debtors. The rule governing the effect of judgments rendered in actions en declaration de simulation by creditors must therefore apply to the judgment rendered in such an action brought by the forced heirs.

The learned counsel for the appellants here confused the effect of a judgment in an action such as here brought with the effect of a judgment rendered in a suit for the reduction of an excessive donation.

Article 1504 of the Civil Code provided that, on the death of the donor or testator, the reduction of the donation, whether inter vivos or mortis causa, can be sued for only by forced heirs, or by their heirs or assigns, neither the donees, legatees, nor creditors of the deceased can require that reduction nor avail themselves of it.

It is manifest that the action there provided for is entirely different from the one now under consideration.

Under the plain language of the codal provision, none but the beneficiaries therein designated can sue for a reduction of an excessive donation. Beyond the légitime the donation remains unimpaired. The creditors are especially denied the right to sue for the reduction, and of course they could not claim any advantage as a result of the reduction obtained by the heirs.

This is not true, however, with respect to simulated transactions in general. Such transactions may be assailed by the creditors as well as by the heirs, and, when set aside or uncovered at the suit either of the heirs or the creditors, the property remains in the same situation as before the simulated act, and subject to the payment of the debts of the succession, or of the common debtor, as the case may be.

A further contention is made by the appellants, though the point was not raised in the lower court, to the effect that, where the succession is the owner in indivision with third persons, the undivided interest may not be sold as such under order of court by the administratrix.

The article of the Code (1136) cited in support of this contention provides:

"If the deceased was in community or partnership with any one who has survived him, the curator of the vacant succession or of absent heirs is bound, immediately after his appointment, to sue for a partition, in order that the part which belonged to the deceased in the community or partnership property be ascertained."

The provision is wholly inapplicable to the instant case. The declared purpose for which an action for partition must be brought is to liquidate the community or the partnership, in order to ascertain the part of the community or partnership that belonged to the deceased.

In the instant case there was no community and no partnership to liquidate. The property was owned in common, and the interest of the succession of Mrs. Bauman was definitely fixed. It did not have to be ascertained by a partition.

The other authorities cited go no further than to hold that an administratrix or an executor may sue for a partition of the property of a partnership of which the deceased was a member.

None of the authorities cited, and none that we have been able to find, go to the ex-

tent of holding that a partition of property held in common, with well-defined proportionate interests, must be sued for by the succession representative, and that a sale of the interest owned by the succession cannot be made in order to pay the debts of the succession.

The judgment below approved the debts listed on the last account, which had been acknowledged by the executrix. Said judgment likewise ordered the sale of the property for the payment of the said debts.

With this understanding of the judgment, we find no necessity for its amendment in any respect.

Judgment affirmed.