CASTER v. MILLER et al.

No. 371.

District Court, E. D. Louisiana, Baton Rouge Division.

May 31, 1941.

Borron, Owen & Borron, of Baton Rouge, La., for plaintiff.

122

Fred Benton, of Baton Rouge, La., and Joseph Nicolosi, of Plaquemine, for defendants.

CAILLOUET, District Judge.

On January 30, 1937, John B. (Jack) Miller was adjudged a bankrupt on his own petition, and the Trustee of the bankrupt estate (who qualified as such on February 9, 1937), filed suit on February 9, 1938, against Mrs. Lillene Bruce Miller, the bankrupt's wife, as well as against said bankrupt, seeking to have set aside and annulled a duly recorded certain notarial act of dation en paiement, which had been executed on November 14, 1935, by the bankrupt in favor of his said wife; said Trustee being authorized to so do, by order of the Referee in Bankruptcy, in the Baton Rouge Division of this Court.

By the Trustee's original complaint, and his supplemental complaint filed on November 18, 1938, it is charged that the bankrupt was not indebted to his wife in the sum of $6,325 as is set out in the dation en paiement under attack; that at the time of the execution of said dation en paiement he owed debts to sundry creditors, and that the transfer of the property described in the act of dation en paiement rendered him insolvent; that, in truth and in fact, he was not indebted to his wife in any amount, and that the attempted transfer was, therefore, without consideration and a simulation executed in fraud of his creditors for the purpose of placing the property in question beyond their reach, and that this was done by the bankrupt with the full knowledge of his wife; all, in contravention of the laws of Louisiana and the Federal Bankruptcy law, 11 U.S.C.A. § 1 et seq.

The Trustee further charged that whilst the property stands of record in the name of the wife, it, nevertheless, remains in the joint possession of the bankrupt and his wife, and is managed, administered and controlled by the bankrupt.

In the alternative, the Trustee pleaded:

1. That if the bankrupt was found to be actually indebted to his wife at the time of the execution of the dation en paiement on November 14, 1935, whether in the claimed sum of $6,325 or otherwise, and if the existent indebtedness was also found to be actually less than the fair value of the property transferred to her by said dation en paiement, then, to the extent that said fair value of the property exceeded the indebtedness found, the transfer of such property constituted a fraud on the creditors of said John B. (Jack) Miller, now bankrupt, and the Trustee of the bankrupt estate was entitled to, and should recover, judgment against the transferee, Mrs. Lillene Bruce Miller, for the full amount of such excess value, bearing legal interest from January 25, 1937, (the date whereon the petition to be adjudged a bankrupt was filed), until paid, with recognition of the existence of a lien upon and against said property, as security for the payment of the amount of such judgment, in principal, interest and costs.

2. That if the amount of actual indebtedness was found to be less than the fair value of the property, its transfer by dation en paiement was without authority of law and constituted a fraud on the said John B. (Jack) Miller's creditors and was null and void ab initio; for which reason the Trustee was entitled to, and should recover, judgment so declaring and decreeing the property in question subject to the claims of the bankrupt's creditors.

3. That if the actual indebtedness by the husband to the wife was found to be less than one-half (1/2) of the fair value of the property transferred, at the time of conveyance by said dation en paiement on November 14, 1935, then the Trustee was entitled to, and should recover, judgment against Mrs. Lillene Bruce Miller, transferee, ordering her to pay to the Trustee an amount sufficient to make up the required "just" price, under penalty of having the dation en paiement rescinded and annulled, with the title to the property therein described thereafter vested in the complainant, in his capacity as Trustee of the bankrupt estate, for the benefit of the estate creditors.

The defendants first filed exceptions to the original complaint on April 7, 1938; the exceptions were two in number, and both, in due course, were overruled by Judge Borah, who was, at the time, the sole Judge of this Court.

The first exception was one to the effect that the petition or complaint disclosed no legal right or cause of action, and the other urged the one-year prescription against the revocatory action (as is provided for by Articles 1987 and 1994 of the Louisiana Revised Civil Code), in view of the fact— so exceptors pleaded—that the transfer from husband to wife took place on November 14, 1935, whilst the husband was not adjudged a bankrupt until January 30,

1937; and the Trustee, though appointed February 8, 1937, did not file his suit until February 9, 1938.

Defendants thereafter filed answer, and trial was had before me, it being stipulated between the parties:

1. That on November 14, 1935, when the husband transferred to his wife, "he owed *practically* the same debts and obligations as shown on his schedule in bankruptcy".

2. That after such transfer, the only assets left to the husband were those "shown on the schedule filed by him in bankruptcy, and as inventoried and appraised therein".

3. That C. R. Caster, Trustee, if called and sworn on the trial, would testify that he had, under authority granted him, sold all of such assets, except property as to which the bankrupt claimed exemption, and that of the accounts receivable listed on the bankruptcy schedule, he had collected all amounts that it was possible for him to collect; and that the total amount realized by him, the Trustee, from the sale of said assets and from said collections, was no more than the sum of Six Hundred and Eighty-Five and 43/100 ($685.43) Dollars.

It is in evidence that defendant Mrs. Lillene Bruce Miller, who was the only daughter in the Bruce household and whose father died when she was 12 years of age, was given $2,500 by her widowed mother as a wedding present, when said defendant and John B. (Jack) Miller were married on November 10, 1909.

It is also in evidence that on November 6, 1909—just before her marriage—Mrs. Miller had sold to her two brothers John G. Bruce and Rufus E. Bruce, her interest in her deceased father's succession, receiving therefor the price of $2,220, $200 of which was in cash and $2,000 represented by their four (4) mortgage and vendor's lien notes, each for the principal sum of $500.

It is established that in addition to these funds, Mrs. Miller owned ten (10) shares of the capital stock of a family "holding corporation" known as the Crescent Land and Improvement Co., Ltd., which was organized in 1907, and that she derived revenue therefrom as the corporation collected rentals and sold off parcels of its landed property, of which there still remain approximately 14 lots.

Out of these paraphernal funds, both she and her husband testified that $1,000 was furnished the latter in or about 1911, so that he might become associated as partner with his brothers in the conduct and operation of one of two Miller Brothers stores in Iberville Parish (La.); $350 cash and the four Bruce notes, of the aggregate principal sum of $2,000, were placed at his disposal for his purchase from one James L. Ferguson, in 1913, of the real property which was subsequently included in the dation en paiement of November 14, 1935; $1500 of such paraphernal funds were used in the construction of the family dwelling house on said so acquired Ferguson property; and several additional small advances were also testified to by both husband and wife.

Viewing the plaintiff's contention in the most favorable aspect justified by a just appreciation of the evidence contained in the record, a sum equal to no less than one-half of the fair value of the property involved in the dation en paiement of November 14, 1935 (or no less than $2,500), was furnished to and used by the husband from the wife's paraphernal funds, and such sum was properly subject to replacement and reimbursement by means of the dation en paiement under attack, and formed the consideration therefor, so that the Trustee's objection to said transaction on the ground that it was without consideration and a simulation pure and simple, which was resorted to by the husband (with full knowledge of the wife) in fraud of his creditors and for the deliberate purpose of placing the property involved beyond the reach of such creditors, falls of its own weight.

The contract of November 14, 1935, is not a myth having no existence in fact though clothed in concrete form; it is *real*, but as so existent in law and not a sham and simulation, it is yet subject to be attacked as an alleged fraudulent preference, provided that the right to annul, avoid and revoke be not barred by the lapse of time.

A simulated sale results when parties execute a formal act of sale of a thing for which no price is paid or is intended to be paid. It has no legal effect and no title is transferred thereby. Succession of Bauman, 1928, 167 La. 293, 119 So. 54.

But if there exists an actual consideration for the transfer evidenced by an alleged act of sale, no matter how inadequate it be, the transaction is *not* a simulated sale; and even though it be charged to be in fraud of the creditors of the vendor,

said transfer can not be set aside *as a simulation,* although it may be subject to annulment on the ground of fraud or the giving of undue preference. Eureka Homestead Society v. Baccich, 1938, 190 La. 494, 182 So. 653; Lowe v. Garriga, 1936, 184 La. 436, 166 So. 131.

A debtor's transfer of property in payment of an antecedent debt is *not simulated,* although, under certain circumstances, it may be subject to the revocatory action, the object of which action is the avoidance and annulment of the debtor's acts and contracts done and executed in fraud of the creditor's rights. Pender v. Gray, 1926, 160 La. 203, 106 So. 784; Ideal Savings & Homestead Ass'n v. Gould, 1927, 163 La. 442, 112 So. 40.

If the dation en paiement of November 14, 1935, be not a simulation, it was a real contract which remained in full legal existence from its said date of execution up to and beyond (unto this present date) the 25th day of January, 1937, whereon was filed John B. (Jack) Miller's petition to be adjudged a bankrupt.

To have had it annulled and revoked as in fraud of their rights, if they so thought it to be, the said Miller's creditors (other than his wife whom he preferred to them) should have resorted to the revocatory action. But, it may be observed in passing, that dations en paiement, inasmuch as they are for the protection of married women, are favorably regarded by the Courts and are maintained where honestly made, for, as said the Supreme Court of Louisiana in Hewitt v. Williams, 1894, 47 La.Ann. 742, 17 So. 269, 272: " * * *. The law favors restitution to the wife, and looks with favor upon the efforts of the husband to secure her [the] just and honest claim of the wife against him. The fact that he is insolvent and embarrassed, that he is pursued by his creditors by harsh remedies, cannot be invoked to destroy the validity of the transaction. The wife, like any other creditor, is sustained in her vigilant efforts to secure her debts; and the husband can be excused if, finding himself in financial straits, affection for his wife, and his duty to her and to their children, impels him to secure her just claim, and to aid and assist her in all proper methods in that direction."

In this same connection, see, also: Lehman, Abraham & Co. v. Mrs. Yette Levy and Husband, 1878, 30 La.Ann. 745; W. B. Thompson & Co. v. T. J. Freeman et al., 1882, 34 La.Ann. 992; and Guaranty Bank & Trust Company v. Hunter et al., 1931, 173 La. 497, 137 So. 904.

The consideration supporting the *real* contract of November 14, 1935, being in an amount equivalent to no less than one-half the value of the property transferred by the dation en paiement, the Trustee's resort to the lesion beyond moiety remedy provided by the Louisiana Revised Civil Code (see Articles 1860, 1861, 1870, 1871 and 1877) is of no benefit, if for no other reason than that the evidence, for instance, does not affirmatively establish that the property ceded to the wife, by way of replacement and reimbursement of her paraphernal funds, was worth, at the time of such cession and transfer on November 14, 1935, in excess of $5,000, if that much, even though full credence be accorded the testimony of the witnesses who testified concerning the securing of the two Dun & Bradstreet credit reports of July 12, 1935, and August 25, 1936, respectively.

Neither the attack of simulation nor that of lesion beyond moiety avails the Trustee, and the evidence affords no support for his alternative claim that judgment should be rendered against the wife for the full amount of excess value received by her in property, over and above the husband's actual indebtedness for the paraphernal funds by him received and used and so sought to be replaced and reimbursed, in property, to his wife by the dation en paiement of November 14, 1935. No excess value appears to have been received by the wife. The record does not establish that the amount of the husband's actual indebtedness was less than the fair value of the property transferred by the dation en paiement. But even if the record did so establish, *this* would not, of itself, justify a finding that the cession was without authority of law and constituted a fraud upon the rights of Miller's other creditors and was null and void ab initio (as the Trustee furthermore contends), but the transfer might have been subject to revocation and avoidance within the time prescribed by Article 1994 of the Louisiana Revised Civil Code; although it has been held that an attack upon a dation en paiement from a husband to his wife fails if the price paid was actually due and was not out of all proportion to the thing sold, saving to the parties in interest their rights, if there exist an indirect advantage in favor of the wife. Leleu v. Dooley, 1896, 48 La.Ann. 508, 19 So. 470.

As already stated, the defendants' one year prescription plea was leveled against the Trustee's original complaint, insofar as it might be construed to set forth a claim in revocatory action; it appears, however, that Judge Borah overruled the plea only after the supplemental and amended complaint already formed part of the record. Be that as it may, the plea was properly overruled as matters then stood. The Trustee's pleadings, upon the face of which the plea was so disposed of, reflected a primary claim based upon a direct charge of simulation pure and simple, followed by three alternative and secondary claims whereby it was sought to secure judgment as follows, respectively, viz.:

1. The transferree to be ordered to pay the Trustee, for account of her now bankrupt husband's creditors, the alleged deficit in the sale price, *if* it were actually found that the husband's indebtedness was less than the fair value of the property transferred to the wife by way of discharge thereof;

2. The contract of dation en paiement of November 14, 1935, to be decreed without authority of law, constituting a fraud against Miller's creditors, and null and void ab initio, with the property described therein declared subject to the claims of the bankrupt's creditors, *if* it were *so* found that the amount of actual indebtedness was less than the fair value of such property;

3. The transferree ordered to pay to the Trustee an amount sufficient to make up the required just price, or suffer the rescission and annulment of the dation en paiement of November 14, 1935, if it were found that the husband's actual indebtedness was less than one-half of the fair value of the property transferred; and the lesion beyond moiety provisions of the Louisiana Civil Code actually applied.

 The one year prescription pleaded was inapplicable to either a case of simulation or to one of lesion beyond moiety and this, alone, justified the Court's action in so overruling the plea at the then existent stage of these proceedings; without mentioning the fact that a prescriptive plea has no standing against an alleged contract, charged to be without legal authority and null and void ab initio.

 Section 7 (Arts. 1968–1994), Chapter 3, Title IV, Book III, of the Louisiana Revised Civil Code, deals with the subject: "What Contracts Shall Be Avoided By Persons Not Parties To Them", and full provision for the revocatory action is therein made. The codal articles in question, however, have no reference to simulated or pretended contracts. Cammack v. Watson, 1846, 1 La.Ann. 132; Decuir v. Veazey, 1853, 8 La.Ann. 453; Lotz v. Folger & Lotz, 1855, 10 La.Ann. 20.

 The one year prescription against the revocatory action, to avoid and annul *real* contracts, is *not applicable* to actions en declaration de simulation, or, to have decreed pretenses and shams what outwardly appear to be bona fide contracts. Lawson v. McBride, 1908, 121 La. 282, 46 So. 312.

Actions for lesions are prescribed by the expiration of four years from the date of the contract attacked, if the same be one between persons of full age. R.C.C. Art. 1876.

As the present state of the record now reveals, the true situation is that of a Trustee in Bankruptcy filing suit over a year after his appointment, in an attempt to avoid a transfer by the bankrupt which was made to his wife more than two years before, in an alleged effort to fraudulently prefer her to his other creditors.

The contract made between the debtor husband and his creditor wife on November 14, 1935, to secure the just debt due her, and to replace and reimburse, in property, her paraphernal funds for which the husband was so indebted, was immune from attack by the revocatory action of any creditor on January 25, 1937, when the Trustee, upon his qualifying as such on February 9, 1937, became vested with the title (as of the date of filing of the petition, or said January 25, 1937) to whatever property constituted the bankrupt estate and with whatever right to avoid any prior transfer of property by the bankrupt as may have still subsisted in favor of his creditors on said January 25, 1937.

 The Trustee acquired no better title or right than were possessed by the bankrupt and his creditors. In re New York Economical Printing Company, 2 Cir., 1901, 110 F. 514; Bush et al. v. Export Storage Co. et al., C.C.N.D. Tennessee S.D. 1904, 136 F. 918; Hewit, Trustee v. Berlin Machine Works, 1904, 194 U.S. 296, 24 S. Ct. 690, 48 L.Ed. 986; Clay v. Waters, etc., 8 Cir., 1908, 161 F. 815.

 The State law must be looked to in order to determine what property the bankrupt owned immediately before the adjudi-

126

cation; whether a transfer by him was fraudulent; and whether the right to avoid a prior fraudulent transfer by him still subsisted in his creditors, so that it became vested in the Trustee as of the date of filing the petition, i.e. January 25, 1937. Commercial Credit Co. Inc. v. Davidson, etc., 5 Cir., 1940, 112 F.2d 54; Engstrom v. Lowell, etc., 1 Cir., 1922, 281 F. 973; Isaacs v. Hobbs Tie & Timber Co., 1931, 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645.

Under the act of dation en paiement of November 14, 1935, title to the Miller property thereafter vested in the wife, inasmuch as the transfer evidenced by such act was *real* and *not* simulated. Therefore, no title to said property vested in the husband on January 25, 1937, nor did right to avoid the transfer, as a claimed fraud upon their rights, still subsist in Miller's creditors on that day.

■ Where a wife has a *real* demand against her husband for paraphernal funds received from her and used by him, a creditor seeking to annul and revoke a dation en paiement (executed between the spouses in order to replace and reimburse the equivalent of said funds), on the ground of fraud and undue preference, must bring his action within one year from the date of said dation en paiement or his action is prescribed. Landry v. Marchais, 1851, 6 La.Ann. 87; Stephen VanWickle v. Sarah Garrett and Husband, 1859, 14 La.Ann. 106; Brown, Administrator, v. Brown, 1878, 30 La.Ann. 966.

So far as the object of the Trustee's suit is to avoid and annul the dation en paiement of November 14, 1935, it can be regarded in no other light than as a revocatory action, by which, according to the Code (to make use of the language quoted from Fennessy v. Gonsoulin, 11 La. 419, 424, 30 Am.Dec. 720, in the Court's opinion in Succession of Britto v. Succession of Fabre, 34 La.Ann. 347, decided in 1882), creditors may cause to be annulled any contract or transaction, so far as they may have been injured by it: "Every device, contrivance or machination [continues the opinion], by which a creditor may have been prejudiced, may form the subject of this action."

The dation en paiement under attack in Succession of Britto v. Succession of Fabre, supra, was held immune from attack under the revocatory action, in view of the one (1) year prescriptive plea set up by the defense.

■ But if it could be successfully contended that the creditors' "right to avoid" subsisted until the filing of the bankrupt's petition on January 25, 1937, or even until the Trustee's election on February 8, 1937, and, therefore, actually vested in such Trustee from the date of filing said petition, as is provided by law, such "right to avoid" was lost and expired within one year from his *appointment,* under the provisions of Article 1994 of the (La.) Revised Civil Code, to the effect that "syndics or other representatives of the creditors collectively" must bring the revocatory action within one year "from the day of their appointment."

In the light of the foregoing, the following is a recapitulation of my findings of fact and conclusions of law, viz.:

### Findings of Fact.

1. On November 14, 1935, at the time of the execution of the dation en paiement between the husband, John B. (Jack) Miller, and Mrs. Lillene Bruce Miller, his wife, the former was indebted unto the latter, for her paraphernal funds had and received from her, in an amount approximating $5,000.

2. The property transferred by said dation en paiement from said husband to his wife, by way of replacement and reimbursement of her said paraphernal funds, was worth hardly more than $5,000 if that much.

3. No creditor of said husband, *then* claiming from him on November 14, 1935, sought to avoid the transfer to his wife, which was evidenced by the act of dation en paiement of that date, and more than one year elapsed between said November 14, 1935, and January 25, 1937, the date whereon he filed his petition to be adjudged a bankrupt.

4. Plaintiff, C. R. Caster, Trustee in Bankruptcy, was elected Trustee on February 8, 1937, and qualified as such on February 9, 1937.

5. Said Trustee filed this present suit to avoid the transfer made by the *"now"* bankrupt on November 14, 1935, no sooner than February 9, 1938, or beyond one year from the *day* of his appointment.

### Conclusions of Law.

1. The right to avoid the transfer evidenced by the dation en paiement of November 14, 1935, to Mrs. Lillene Bruce Miller, which the *then* other creditors of John B. (Jack) Miller, vendor, had avail-

able to them under the revocatory action provided for by Section 7, Arts. 1968–1994, Chap. 3, Title IV, Book III of the Louisiana Revised Civil Code, no longer subsists in view of its having become prescribed by the prescription of one (1) year; and no right of action, therefore, exists in C. R. Caster, Trustee, to maintain this suit, which must be dismissed.

Let judgment be entered, accordingly.