SUCCESSION OF LAMOTTE.

---

(34 South. 122.)

No. 14,197.

## Succession of LAMOTTE.*

(January 19, 1903.)

DESCENT—FORCED HEIRS — COLLATION — REDUCTION.

1. A father, who had been the tutor of an only daughter, and had continued to transact

---

*Rehearing denied April 13, 1903.

her business after her majority, transferred to her certain properties, in the form of sales, after he had been a widower for nearly 40 years, and was over 70 years of age. He had, just prior to the sales, acknowledged he owed her $6,000. The property was worth about $13,000. He subsequently married, and of this second marriage there was issue, one child. At his death the tutrix of the younger child, alleging that there had been no consideration for the sales, sought to have the property brought into the succession and subjected to collation or to reduction to secure the legitime of the second daughter.

*Held,* that the ownership of the property was vested in the older child, but that even if, by reason of their form and the circumstances under which the acts of sale were executed, the property should not be subjected to collation, it was held subject to reduction, and to payment in money of the legitime of the younger sister; the older child being entitled, in fixing the amount of the legitime, to have $6,000 deducted as a debt of her father.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

In the matter of the succession of A. M. Lamotte. Action by Octavie St. Avide, tutrix of Emma Lamotte, against Louisa Lamotte. From the judgment, plaintiff and Emma Lamotte, as forced heir, appeal. Affirmed.

Hugh S. Suthon, E. J. Méral, and George Denègre, for appellants. Albert Voorhies, for appellee.

### Statement of the Case.

NICHOLLS, C. J. Octavie St. Avide brings this suit. She alleges that she is the widow of A. M. Lamotte, and tutrix of Emma Lamotte, the issue of her marriage with her said husband; that he was married twice; that his first wife died in the year 1853; that of the first marriage there were born two children, one of whom died without issue, and the other—and surviving child of the first marriage—is Louisa Lamotte, now divorced wife of H. Rouillot, and a resident of Paris, France.

That the deceased, A. M. Lamotte, was married to petitioner in the city of New Orleans, where they resided together till the death of A. M. Lamotte.

That Emma Lamotte was born of said marriage, and is now about 6 years old.

She represents that Louisa Lamotte, the eldest surviving child of A. M. Lamotte, is near 50 years of age, and has resided nearly all her life in Paris, France, where she was sent by her father to be educated, and he furnished her means and support, off and on, all of her life there; that A. M. Lamotte was advanced in years when he married petitioner.

That for several years before his death Mr. Lamotte was in feeble health, was worried very much about his business affairs, and his worry was largely attributable to, and was increased materially by, constant demands made upon him by his daughter Louisa for remittances of money to her in Paris; that in 1890 A. M. Lamotte was possessed of considerable real estate in the city of New Orleans, which was worth at that time between fifteen and twenty thousand dollars; that he owed no debts; that, notwithstanding the excellent condition of his estate, in his solicitude for all his children and for petitioner, his second wife, he began to make transfers of his real estate, in the form of sales, until he had divested himself of all of his property, and at his death left no property in his name. These transfers were made as follows: He transferred nearly all of his property to his daughter Louisa—say, about four-fifths of his estate. The remaining one-fifth he transferred to his second wife. He then obtained from his daughter Louisa a power of attorney, and acting under it he transferred two lots of ground on Elysian Fields street, through a person interposed, to his child Andrea Lamotte, a minor. The property which was transferred to his second wife was sold by her, and the proceeds were by her turned over to him, part of which was sent to France, to Louisa, in response to her importunities for money, and part was expended to build new houses upon the property on Elysian Fields street, upon the property which stood at that time in the name of the child Andrea.

Now, acting as the tutrix of Emma Lamotte, the legitimate child and forced heir of the said A. M. Lamotte, she avers that all of the aforesaid transfers were made without any consideration paid to A. M. Lamotte; that the effect of the said transfer was to divest him of all of his property; and that the only money A. M. Lamotte realized was from the proceeds of the property transfer-

red to his second wife, and which was turned over to him as aforesaid.

That Mr. A. M. Lamotte some time before his death realized the fatal error he had made in making all the aforesaid transfers; that the bulk of his property had been transferred to Louisa Lamotte, his eldest daughter, and stood in her name, under and by virtue of acts purporting to be sales, and importing a consideration.

That in his dilemma, and for the purpose of repossessing himself of his property, he brought an action to have the aforesaid transfers to his daughter Louisa set aside, as will more fully appear by reference to record No. ——— of the docket of the district court; that he necessarily failed in this action, in the form in which it was brought; and he appealed the case to the Supreme Court; that he died pending the appeal, and his executrix, who was his second wife, made herself a party to the cause, as executrix of his succession, and a decision was rendered, and reported in 48 La. Ann. 572, 19 South. 570; that Louisa Lamotte now claims to have recovered title and possession to the property on Elysian Fields street, which, as stated aforesaid, was placed in the name of the child Andrea Lamotte by their common father.

That after the death of A. M. Lamotte the issues changed; that, under the existing state of affairs, if the pretensions of Louisa Lamotte are maintained, she is the owner of the entire estate left by her father, or once owned by him, and that by virtue of transfers made without consideration; that Emma Lamotte is as much the legitimate child and forced heir of her father as is Louisa; that, in all the aforesaid proceedings after the death of A. M. Lamotte, Emma Lamotte was not a party, and was not represented; that, as forced heir of her father, she can and does contradict any and all allegations or declarations made by her said father, A. M. Lamotte, with reference to consideration or considerations received by him from his daughter Louisa for the transfer to her of his real estate. She now charges that the following transfers were made by her father A. M. Lamotte to his eldest daughter, Louisa, without any consideration, viz.:

The sale by A. M. Lamotte to Louisa Lamotte, wife of Rouillot, by act before M. T. Ducros, notary public, passed on the 16th of January, 1891, and recorded in the conveyance office of this parish, in Book 135, folio 358, of the certain described property.

Second. Another sale by A. M. Lamotte to Louisa Lamotte, passed before Aimee Ducatel, notary public, on March 8, 1890, and registered in said conveyance office, in Book ———, folio ———, of certain described property.

That the above constituted all the property left by A. M. Lamotte at the time of his death, and that really belonged to his estate, though a paper title as aforesaid had passed to Louisa Lamotte, who now pretends to be the present owner; that his property should be decreed to belong to the estate of A. M. Lamotte, and subject to all the rights of his heirs; that, in addition to the above real estate which is claimed by Louisa Lamotte, she, the said Louisa Lamotte, divorced wife of Rouillot, has received in money from her said father large sums of money, an account of which Louisa Lamotte has persistently refused to furnish, but which petitioner charges exceeds the sum of $10,000; that there should be judgment against her, charging her with the said sum of $10,000, or as much thereof as may be found due to the estate of her father, and that all of the above-described property and the aforesaid sum of $10,000 should be decreed to belong to the estate of A. M. Lamotte, and subject to partition among his heirs; that the pretended title of Louisa Lamotte to the said real estate should be decreed null and void, and Louisa Lamotte should be ordered to surrender same for partition, and account for all revenues thereof which she has received, and which petitioner charges exceeds the sum of $4,000; that an inventory and accounting of all the property and assets of the estate of A. M. Lamotte should be ordered made by the court, to serve as a basis for a partition herein, and against which all parties may assert their claims.

But in the alternative, if the aforesaid conveyance to Louisa Lamotte be decreed to be valid, as resting upon a consideration of any character whatsoever, she prays that Louisa Lamotte, divorced wife of Rouillot, be compelled to state and prove the nature and extent of said consideration; that she be further ordered to account for any and all sums

of money she has received from her father as aforesaid, and that the court may fix the size and value of the estate of the late A. M. Lamotte, so that the legitime of the minor child, Emma Lamotte, may be determined; that if as pretended by Louisa Lamotte, the conveyance of real estate aforesaid made to her by her father were donations, the same should be reduced to the disposable portion and made subject to collation in favor of the minor, Lamotte.

In view of the premises, she prays that Louisa Lamotte, divorced wife of Hypolite Rouillot, be cited to answer this demand; that there be judgment in favor of Emma Lamotte and against defendant, decreeing all the transfers by A. M. Lamotte to Louisa Lamotte, as named in the foregoing petition, to be null and void, and of no effect against Emma Lamotte, one of the forced heirs of the deceased, A. M. Lamotte; that the said real estate described in said transfers before Ducros and Ducatel, notaries, be decreed to belong to the estate of A. M. Lamotte, and subject to the rights of his heirs, either as creditors of their said father, or as his heirs; that there be further judgment against Louisa Lamotte for the sum of $10,000, or as much thereof as may be found to be due by the court, and ordering her to collate said sum, either in kind, or by taking less.

But if the court should maintain the conveyances aforesaid as donations resting upon a consideration, then she prays that the nature and extent of the consideration be fixed by the court contradictorily between the parties hereto; that the legitime or forced portion coming to the forced heir Emma Lamotte be fixed by the court, and that Louisa Lamotte be ordered to collate an amount sufficient to pay off the rights of the minor Emma Lamotte; that for the above purposes an inventory and partition of the estate be ordered in due course, and for all and general relief.

Upon the petition of Mrs. Octavie St. Avide, alleging that she was the mother of Andrea Lamotte, issue of the union between herself and A. M. Lamotte; that the said Andrea Lamotte, or Eugenia Andrea Lamotte, had an interest in the succession of her father, and had no tutor; that she herself had qualified as the natural tutrix of Emma Lamotte, the legitimate issue of her marriage with A. M.

Lamotte; that, as there might be conflicting interests between the parties, she has been advised that a tutor should be appointed to represent her—George St. Avide was appointed and qualified as dative tutor of Andrea Lamotte.

Louisa Lamotte pleaded a general denial. She then averred that she was the legitimate daughter of André M. Lamotte by his lawful marriage with Rose Emma Dupuis, since deceased.

That Andrea Lamotte is an illegitimate child, born out of wedlock September 10, 1890, the child of Octavie St. Avide, the concubine of André M. Lamotte, deceased, who never legitimated said Andrea; that is, as a matter of fact he did not, nor could he, in law, since there existed at the date of her conception and birth a lawful descendant, to wit, respondent.

That respondent accepted, without benefit of inventory, the succession of her father, André M. Lamotte.

That the two sales of March 8, 1890, and of January 16, 1891, from André M. Lamotte, since deceased, to respondent, Louisa Lamotte, were in reality onerous donations; the same being intended for a twofold purpose, to wit, first, as a settlement and liquidation of tutorship account, without passing on the various items thereof, and striking an exact balance of indebtedness to respondent; and, secondly, for whatever excess there might be of the actual value of the properties thus sold, over and above what might be the reliquat de tutelle as a donation en avancement d'hoirie on her future inheritance of his succession.

That, however, the amount coming to respondent, and due by her said tutor, was largely in excess of the half of the stipulated prices of these two sales, and furthermore the stipulated prices themselves were inflated, and largely in excess of the then actual value of all the properties in question.

That her father took her, a mere child, to Paris, France, where she had always resided, excepting the short sojourn she made in New Orleans at the time and during the pendency of suit in matter of A. M. Lamotte v. Mrs. Louisa Lamotte (No. 42,765), brought to annul and set aside aforesaid act of sale of March 8, 1890.

That when she attained her majority, she

having been and being still actively and laboriously engaged in work for a living, she was informed by her father that there was nothing coming to her from the succession of her deceased mother, Rose Emma Dupuis; that, on the contrary, she was indebted to him for expenses of maintenance and education in the sum of 16,209 francs.

He presented to her an account showing her indebtedness in that amount, asking her to approve the same and to sign the document; but she, in her total ignorance of the condition of the tutorship, was loath to act hastily, but afterwards she did affix her signature, with the reservation, however, that the matter be submitted to the Louisiana tribunal for verification; the said document, dated June 16, 1870, to be produced on trial.

Subsequently (13th November, 1871), on her marriage contract, her father intervened, averring that he had not rendered an account of tutorship to her, but he stipulated to do so in the course of one year. Since then she had repeatedly applied to him for an account, in person and through mandatories, but he had invariably postponed compliance.

That during all this intervening time respondent was wholly ignorant of her rights in the succession of her deceased mother, and of the proceedings in court filed during her minority, except the declaration made by him to her in a letter of July 30, 1890, that he owed her $7,000.

Then it was he applied to her repeatedly to send her power of attorney to a friend he would indicate, in order to settle her affairs, but she sent the power at one time to Mr. Lacroix, and at another to ―― Lombard, Esq., attorney of French consulate, but he obstinately refused to make with either of them the liquidation; that thereupon she sent the power of attorney to Marcelin Martin, her father's bosom friend, who represented her in the aforesaid sales by him to her.

That in none of the proceedings in the succession of Rose Emma Dupuis, filed by her tutor, did he account for and charge himself with the sum of $3,000 capital and $1,445 interest ($4,445), inherited by her deceased mother from François Dupuis, her uncle, and brought to him as per marriage contract between her mother and father June 26, 1838.

Nor did he account for her deceased mother's dotal property, the undivided half of lot and improvements situate on Victory street, between Spain and Enghien, which property, carried as such on the aforesaid marriage contract, was nevertheless inventoried as community property, and as such adjudicated to him.

That in his provisional account as tutor the said A. M. Lamotte illegally charges the minors, first, with $800 funeral expenses; secondly, with $1,052, a promissory note posterior to the dissolution of the community; third and fourth, with one-half of two promissory notes, of $575 and $2,000, as having been paid by him, without any explanation whatever; fifth, with $1,900, the one-half of slaves which he had sold during the existence of the community; making a total of illegal charges of $5,080.

That Maria Lamotte, a minor sister, and Louis Numa Lamotte, her brother, having died without descendants, respondent remaining sole heir of her mother's succession, the aforesaid illegal charges affect her in full for her original share, and for the three-fourths of the shares of her deceased brother and sister; that, upon an equitable settlement of tutorship accounts, respondent would appear to have been entitled to a balance considerably more than $7,000, the amount fixed by her said father in her letter aforesaid.

That the sales of December 29, 1891, from A. M. Lamotte, agent of Louisa Lamotte, to Marcelin Martin, and of January 16, 1892, from Marcelin Martin to A. M. Lamotte as guardian of Andrea Lamotte, the illegitimate child of Octavie St. Avide, then the concubine of said A. M. Lamotte, are absolute nullities, as declared by the judgment of the civil district court in matter (No. 49,453) of Louisa Lamotte v. Marcelin Martin et al., and affirmed by the Louisiana Supreme Court February 20, 1899 (27 South. 291[1]) as fully set forth in the pending exception of res judicata set up by respondent against plaintiff's and intervener's demands; that respondent now, as part hereof, reiterated all her allegations in the petition which she filed in that suit, and more expressly she averred that said sales were absolute simulations, the said

---

[1] 52 La. Ann. 864.

Marcelin Martin being an interposed person to assist André M. Lamotte, in violation of his duty as her mandatory, to convey unlawfully her property gratuitously to the illegitimate child, Andrea Lamotte, which facts respondent was ready to prove as res integra; that by means of false information by the deceased to respondent, and acting under the influence of the mother of said child Andrea, respondent's father obtained and procured from her a procuration to sell the two properties therein mentioned, for the alleged purpose of paying debts which he said he had contracted for her, and of renovating the other properties which he had sold for her, and which he was administering as her agent, while the real and sole purpose and object was to make a sham sale to the interposed person, who then would transfer the same by sham sale to the child Andrea; that this was done through the said Marcelin Martin, who, with the said André M. Lamotte, acting first as respondent's agent, and then as the guardian of said illegitimate child, Andrea, executed the aforesaid acts of sale of December 29, 1891, and January, 1892.

That should the court order a partition of the succession of André M. Lamotte, after disposing of the foregoing issues, then respondent reserves the right to litigate all matters connected with the demand for collation as an incident of partition; the same to be considered with reference to the action of the notary. In view of the premises, respondent prayed to be dismissed, with costs, and that, as plaintiff in reconvention, respondent be recognized as the owner of the various properties described in the two acts of sale from her father to herself of March 8, 1890, and of January 16, 1891; that the acts of sale from André M. Lamotte, as her agent, to Marcelin Martin, of December 29, 1891, and from Marcelin Martin to André M. Lamotte, guardian of Andrea Lamotte, of the 15th January, 1892, be declared null and void; that Emma Lamotte, through her tutrix, Octavie St. Avide, and Andrea Lamotte, through her tutor, George St. Avide, be cited in reconvention; and that accordingly judgment be rendered against them in favor of respondent, plaintiff in reconvention.

Andrea Lamotte, through her tutor, intervened in the suit. He alleged that the late A. M. Lamotte was the father of the minor Andrea Lamotte, and that she (the said minor) is a legitimate child of the said deceased A. M. Lamotte, and as such was entitled to all the rights of a forced heir in his estate; that a suit was now pending in this court between Mrs. A. M. Lamotte, natural tutrix of the minor Emma Lamotte, and Louisa Lamotte, divorced wife of H. Rouillot, both also forced heirs of A. M. Lamotte. Petitioner alleged that he was the maternal uncle of the minor Andrea Lamotte, and had qualified as dative tutor of the said minor; that he intervened in these proceedings in order to set up the rights of the minor Andrea Lamotte as forced heir of the deceased, A. M. Lamotte, in the partition of his estate, as provoked by her coheir Emma, through her natural tutrix in this suit. Intervener alleged that so far as all the various transfers of property by A. M. Lamotte were concerned, to Louisa Lamotte, he believed and declared that the same were made without consideration, and he joined in the allegation of Mrs. A. M. Lamotte, natural tutrix of Emma, as set forth in her suit against Louisa Lamotte, now pending herein.

In view of the premises, petitioner prayed to intervene herein (that is, in the suit then pending between Emma Lamotte, minor, and Louisa Lamotte, divorced wife of H. Rouillot), and that there be judgment decreeing all the sales made by A. M. Lamotte to said Louisa Lamotte as having been made without consideration, and allowing to the said Andrea Lamotte her share of her father's estate, whatever it might consist of, as determined by the court herein.

The district court rendered judgment adjudging and decreeing that Louisa Lamotte be recognized as the owner of the property described in the petition herein filed, subject, however, to the obligation to collate the same in the succession of her deceased father, André M. Lamotte; and she was also recognized as entitled in any partition thereof to claim out of said properties, or of the proceeds thereof, the sum of $6,000, first and before all others.

It further adjudged and decreed that the right of Louisa Lamotte and Emma Lamotte, as sole legitimate children and forced heirs of André M. Lamotte, to share in equal parts in the residue of such properties, or of the proceeds thereof, after deduction of $6,000

as aforesaid, be, and said rights are, now fully recognized.

It further ordered, adjudged, and decreed that Louisa Lamotte (should she, within 30 days from the time at which this judgment shall have become final, elect to collate by taking less) be, and she is hereby, recognized as having the right to retain the whole of the properties, and to be put in possession thereof, on paying to the minor Emma Lamotte her share in the estate of her father, to wit, the sum of $3,500.

It further adjudged and decreed that all demands and counter demands and claims of the parties in the proceedings be rejected, the costs to be borne by them in equal proportions.

It further decreed that the demand of the intervener be rejected at her costs.

Emma Lamotte, through her tutrix, appealed. The intervener Andrea Lamotte acquiesced in the judgment.

The appellee Louisa Lamotte answered the appeal. She prayed that the judgment of the district court be amended so as to allow her demand in full, as stated in her reconventional demand of partition, and that in other respects the judgment be affirmed.

A. M. Lamotte was married to Rosa Emma Dupuis in 1838, and prior thereto a marriage contract between them was executed, in which the property referred to as belonging to the wife was described.

It consisted of the undivided half of a tract of land mentioned as being situated in Faubourg Marigny, and of two sums of money bequeathed to her by one François Dupuis.

The wife died about 1853, leaving three children—Louis, Louisa, and Marie. An inventory was made of the property in 1853. A. M. Lamotte was confirmed as tutor to his children. In April, 1853, upon the advice of a family meeting, the interest of the children in the community was adjudicated to the father. Among the property so adjudicated was included, by mistake, the real estate above mentioned, which belonged to the mother.

In May, 1853, upon the advice of a family meeting, two special mortgages were executed by Lamotte in favor of his children; the second being to secure a sum of $4,455, which sum he declared had been brought in marriage by his wife, but had been inadvertently omitted in the first special mortgage which had been given. Nothing seems to have been done between 1853 and 1865, when Marie died and Louis became of age.

Louis is said to have died without issue. In 1865 a family meeting was convoked in behalf of the minor Louisa, who had inherited from her mother and sister. The tutor was authorized by this meeting to execute a special mortgage in her favor for the sum, of $2,662, the amount declared to be coming to her from these two sources. In 1869 Louisa became of age. In 1871 she married, but not very long thereafter she obtained a divorce from her husband. She had been taken in early childhood to Paris, and there educated.

Her father returned and resided in New Orleans.

On March 8, 1890, Lamotte transferred to her certain described properties, in the form of a sale, in New Orleans, for the price of $7,000, and also on the 16th of January, 1891, transferred to her, in the form of a sale, for the price of $4,200, certain other real estate.

On the 3d of February, 1891, he married Octavie St. Avide, with whom he had been previously living, and by whom he had had a daughter Andrea Lamotte.

On May 1, 1892, there was born, issue of this marriage, a daughter, Emma Lamotte. In March, 1890, prior to his second marriage, Lamotte sold to Octavie St. Avide a lot of ground for $800, and later, on the 16th of January, 1891, another lot of ground for $600. The vendor reserved to himself the usufruct of these properties during his life. In addition to these properties, Lamotte had caused the title of a lot of ground to be taken in the name of one of his friends, Marcelin Martin, and Martin sold the same to Octavie St. Avide, so that she held from him, in point of fact, these pieces of property.

After the marriage of Louisa, her father attended to her affairs in Louisiana, and while so acting procured from her a special power of attorney, under which he sold to Marcelin Martin one of the lots which he had conveyed to her. Martin then sold to the minor Andrea Lamotte, her natural father accepting the sale for her. In May, 1894, Lamotte brought suit in the civil district court for the parish of Orleans against his daughter Louisa, in which, after referring

to the acts of sale to her which he had executed, he averred that the considerations of the sales had never been paid by her, nor received by himself; that they were intended as donations; that in making said donations he dispossessed himself of all his property; that the considerations of the donations were that the revenues of the same were to be used for his sustenance; that since the same acts had been made he had become partially paralyzed, and unable to earn a living; that his daughter had failed to comply with conditions of the donations, and refused to allow him the use of the revenues derived from the property, and had furthermore proved herself ungrateful to him, within the last year and before, and therefore said sales or donations should be revoked and adjudged null and void.

The defendant, after pleading the general issue, denied that there was no consideration for the transfer to her. She averred that the properties in controversy formed part of the community between plaintiff and respondent's mother, or to her dotal property; that after the death of his wife he acted as her natural tutor up to the date of her majority, and after that to the date of the institution of the suit as her agent, managing her affairs, she residing all the time in Paris; that he received rents and revenues, and never rendered her an account, nor ever had a settlement in liquidation, when, at the date of the transfers, in order to have a final settlement, he executed the acts of transfer to her.

She then referred to his second marriage, of which she declared she had been kept in ignorance, and to the acts of transfer from her father to Octavie St. Avide. She charged that the suit then pending had been instigated by her for the sole purpose of providing exclusively for the mother of his last children. She attacked the transfers to her, and prayed that they be annulled, as also, for reasons assigned, a sale which had been made to Andrea Lamotte by Marcelin Martin. She prayed to be decreed the owner of the properties conveyed to her. This suit terminated in the district court by a judgment rejecting plaintiff's demand and dismissing his suit—the demand of the defendant for the nullity of sales.

The plaintiff, Lamotte, appealed, but died pending the appeal. His wife qualified as his executrix, and as such became a party to the suit.

The Supreme Court affirmed the judgment below, amending it herein so as to maintain the conveyances of plaintiff to defendant as donations inter vivos. The case is reported in 48 La. Ann. 572, 19 South. 570.

After the death of her father, his daughter instituted an action against his widow, as tutrix of her daughter Andrea Lamotte, and Marcelin Martin, to set aside and annul the sale made to the latter by her father, acting as her agent, of one of the pieces of property which he had conveyed to her, and also the subsequent sale of the same property by Marcelin Martin to Andrea Lamotte.

This suit terminated in a judgment in this court (reported in 52 La. Ann. 864, 27 South. 291, which affirmed the judgment of the district court, which had adjudged plaintiff, Louisa Lamotte, to be the sole owner, by donation inter vivos, of the property in controversy, in so far as it adjudged null and void the transfer of the same to Marcelin Martin on the 29th December, 1891, and also the transfer by Martin to Andrea Lamotte on January 14, 1892. It amended the judgment by dismissing, as of nonsuit, plaintiff's demands against Andrea Lamotte for rents, and referred, under full reservation, questions of collation to be disposed of in the settlement of the succession. It further amended the judgment, decreeing that the plaintiff should be sent into possession of this particular property; it being at the time in that of the widow and her children.

The evidence shows that after the property in question had been conveyed to Andrea Lamotte by Martin, and was standing in her name, her mother sold the three properties which she had received from A. M. Lamotte, directly and indirectly, and used the same, with the exception of $1,000, which she turned over to her husband, in building a house upon it. The title to this property was afterwards, as we have seen, placed back in the name of Louisa.

The sale to Marcelin Martin was attacked by Louisa on the ground that the power of attorney from herself to her father had authorized its sale, whereas the act to Martin was a simulation, as was also that from Martin to Andrea; the two acts being the

alleged scheme to divest her of her title, and place the same in the name of her father's illegitimate child, Andrea. The evidence shows that, in the interval between 1889 and the bringing of the suit by the father against his daughter, he had remitted to her, at Paris, at various times, a large amount of money, but that part of the same was for his use and benefit, and part for that of his daughter. Precisely what part went to each is not certain. The evidence further shows that, pending the first suit referred to herein, the property standing in the name of Louisa was judicially sequestered at the instance of A. M. Lamotte; that, while in the hands of the sheriff, quite a large amount was paid out by him for repairs, taxes, etc., and that the balance at the termination was turned over to Louisa; and that the property which was transferred to Andrea has been from the date of said conveyance to her in the possession of her mother and sister.

### Opinion.

The defendant, Louisa Lamotte, declares in her answer in the present suit that "the two sales to her were in reality onerous donations, the same being intended for a twofold purpose: First, as a settlement of tutorship account, without passing on the various items thereof, and striking an exact balance of indebtedness to her; and, secondly, for whatever excess there might be in the actual value of the properties thus sold over and above what might be the "reliquat de tutelle," as a donation "en avancement d'hoirie" on her future inheritance of his succession.

That, however, the amount coming to her, and due by her father, was largely in excess of the half of the stipulated prices of these two sales, and furthermore the stipulated prices themselves were inflated and largely in excess of the then actual value of all the properties in question; * * * that, upon an equitable settlement of tutorship accounts, she would appear to have been entitled to a balance considerably more than $7,000, the amount fixed by her father in a letter to her.

She contends that, the property having been conveyed to her in the acts of sale importing on their face full consideration, she is not subject to collation for the same; that the condition under which the acts to her were passed to her, and their very form, carried with them, by necessary implication, as strongly and even more strongly than words themselves could do, the intention of her father that she should hold the property irrevocably, absolutely free from all claims of collation. She refers the court to Marcadé, vol. 3, p. 231, where that author says: "La pensée de la loi est donc que la donation déguisée sous la forme d'un contrat onereux reste soumise à la réduction, mais non pas au rapport."

We referred ourselves to this same subject in Carroll v. Succession of Carroll and the Heirs, 48 La. Ann. 971, 20 South. 210, where will be found quoted a number of French authorities, taken from Dalloz & Vergé, Codes Annotés, under article 843, C. N., Nos. 85, 87, and 97.

The acts in the case before us were passed under peculiar circumstances. The vendor was the father of the vendee. He had at that time no other child, and he was not likely to have any other, as he was then a man over 70 years of age, and had remained for nearly forty years a widower. His daughter unquestionably held a large claim against him, whose liquidation, if required to be put to judicial test, would most likely lead to bitterness and acrimony between himself and his child. He was evidently anxious to get rid of the whole matter. Under the special circumstances of this particular case, we can reach no other conclusion than that, as a matter of fact, the intention of the father was to vest the property in his daughter absolutely and irrevocably. How could the idea of her being subject to future collation have entered his mind, where there was no other child or descendant with whom she would be called to collate and placed upon an equality? The father, in executing acts of the form of those between himself and his daughter, committed himself to the absolute conveyance of the property. He could go behind the recitals of the act only in the event he should go behind it on some ground of fraud or illegality. The particular attack which he made upon the acts conceded that they were not simulated. This court held, both in the case in 48 La. Ann. 572, 19 South. 570,

and in that in 52 La. Ann. 864, 27 South. 291, that the ownership of the properties was vested in Louisa Lamotte, and upheld her title, though not as resulting purely and entirely from a sale or dation en paiement. By its decisions the court left open for future adjudication all questions which might be raised between the parties as to a claim for collation, or for a reduction to obtain the legitime.

The necessities of this case do not require us to say whether generally an act of sale between a father and one of his children, importing full consideration and equivalents, can be gone behind by the other children at his death in order to invoke collation in their own behalf, and, if so, under what circumstances and to what extent this can be done. Article 1248 of our Revised Civil Code declares that "if a father has sold a thing to his son at a very low price * * * that is subject to collation." The tutrix of Emma Lamotte urges that the acts were without consideration, and the properties should be held to belong still to the succession, as if the acts of sale had not been passed. This position cannot be maintained under the evidence. The case is not one of simulation, but, at best, one of indirect advantage, not carrying with it as a consequence absolute nullity. Leleu et al. v. Dooley, 48 La. Ann. 516–518, 19 South. 470. The question involved here is not one of collation, but of reduction. Appellee admits that her claims against her father did not amount at the time of the acts to her to the full value of the properties conveyed. Had there been any children of the vendor in existence at the time of the acts, Louisa, to the extent of that difference, would have been given, in fact, an indirect advantage over them. It may be admitted, for the purposes of this suit, that this, in view of the form of the act, would not have entitled the heirs to invoke collation; but how about reduction, if the situation was such that this indirect advantage would trench upon the legitime of the other heirs? Marcadé, in the passage which counsel of appellee quotes, says that, although collation could not be claimed, reduction could.

It is true that when Lamotte executed these acts to his daughter he was a widower, and had no other child than Louisa, and therefore his intentions at that time have great influence in determining whether collation could be invoked by a change in the situation as to children subsequently born; but the situation as to legitime is controlled by the facts of each case, acted upon by the law applicable to these facts, independently of and in spite of the intentions or wishes of the donor. The fact that, at the time donations are made by a person, he has but one child in existence, does not cut off those who may be born thereafter from the benefits of their legitime. The 'father owes an equal duty to his children, and he cannot, by anticipation, favor the earlier at the expense of the later children. The law deals with the conditions of things at the death of the donor. The only parties interested in this litigation are the children of the deceased. There are no third parties concerned in the litigation. We are not called on to say what the situation of a third party would be, who should buy property in good faith and for a valuable consideration from a child who holds title under an act in the form of a sale, when the father is at the time of the sale a widower, and the child is an only one, and the transfer is in fact a pure donation to it. Appellee claims that the amount of the indebtedness of her father to her, found by the court to be due her at the time of the sale, was too small, and that it should be increased, but she herself is unable to fix with any precision what that amount is. The only amount which was acknowledged to be due by the father was $6,000, and we are forced to adopt that as the amount due. Appellant urges that prescription covered appellee's claims against her father, but that position is untenable. He never denied being indebted to her, and finally fixed the amount due by himself to her at $6,000, and extinguished his indebtedness by transferring to her an interest pro tanto in the property he conveyed to her. If there had been any prescription, he thereby renounced it. Appellant claims that interest should have been decreed to her on her legitime from the date of the father's death, but any interest which might be due her was compensated by the rent of the property which was in her possession. It must be borne in mind in this connection that appellee's interest in the property did not rest exclusively upon a do-

nation, but in part upon the payment of a debt which her father owed. We think the court below reached conclusions as nearly correct as it was possible to reach under existing circumstances. The fact that appellant was for so long a time the only child of Lamotte caused her very naturally not to press her father to a precise liquidation and settlement of her claims. As the result, a condition of things has arisen which it is beyond our power to rectify.

For the reasons herein assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed; costs of appeal to be borne by the appellant.