SOMMERVILLE, J.
This is a petitory action in which plaintiff claims to be the owner of -1/ieo interest in certain lots in the town of Vivian, Caddo parish, described in her petition. She alleges that she inherited her interest from her mother, at the dissolution of tile community between her father and mother, on the death of the latter. On the trial of the cause it was shown that some of the heirs of her father and mother .had died' after the dissolution of the community, and that the father had inherited certain portions of the property, which had the effect of reducing plaintiff’s interest to 21/»2i-
The defendant contends that the property was not the property of the community existing between plaintiff’s father and mother; but that ihe father acquired same, by a verbal sale, before his marriage to plaintiff’s mother; and- that the act of sale was afterwards reduced to writing, and signed by the parties during the existence of the community. And he claims that the title given by plaintiff’s father was full and complete, and divested all of his heirs of all interest therein. He further pleads the prescription of five and ten years.
There was judgment in favor of petitioner for the interest in the property shown to be in her, and defendant has appealed.
[1] When defendant offered oral evidence to prove that the sale of the property in question to plaintiff’s father was a verbal sale, and at some time prior to his marriage to plaintiff’s mother, and that the written act of sale subsequent to the marriage of the parties was not a true act of sale, objection was made that parol evidence fould not be introduced to amend, alter, .or change the written aot. This objection was properly sustained. Article 2440, R. O. C., provides:
“All sales of immovable property shall be made by authentic act or under private signature.
“Except as provided in article 2275, every verbal sale of immovables shall be null, as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted.”
Article 2236 says:
“The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery.”
And article 2276:
“Neither shall parol’ evidence be admitted against or beyond'what is contained in the acts, *155 nor on what may have been said before, or at the time of making them, or since.”
In the case of Raper’s Heirs v. Yocum, 3 Mart. (O. S.) 424, 444, it is said:
“Nothing can be more positive than this prohibition of our laws never to recognize as valid a verbal sale or a promise to sell an immovable or a slave.”
In Baker v. Atkins et al., 107 La. 490, 32 South. 69, it is said:
“The foregoing provisions of law, in so far as they relate to the sale of immovable property, establish and emphasize the rules: (1) That such sales shall be without effect unless evidenced by writing, with the single exception that a verbal sale is to be held good as against the vendor or vendee who confesses it when interrogated on oath, provided actual delivery has been made of the property. (2) That all such sales shall be ‘utterly null and void, except between the parties thereto,’ unless and until duly recorded in the proper office, and to this rule there is no exception.”
See, also, Wright, Blodgett & Co. v. Elms, 166 La. 150, 30 South. 311; Hoffmann v. Ackermann, 110 La. 1070, 35 South. 293; Patterson v. Landru, 112 La. 1069, 36 South. 857.
Defendants, on their brief, cite certain authorities which would seem to differ from those here relied upon; but in most of these cases error or fraud was alleged, and parol evidence was admitted.
The jurisprudence of the state on this point was very thoroughly reviewed in the recent case of Robinson v. Britton, 137 La. 863, 69 South. 282; and it was there said that if the particular title here in question were open to such attack, all other titles to real estate would be similarly open, and no seller or purchaser of such property could feel assured that he will not, some day, be called into court, to find an oral contract, of which he never before heard, substituted for the : solemn, written, authentic contract upon which' he has -relied. Such a contract cannot be established upon mere oral testimony, unless plain English words have lost their meaning, and another different and oral contract substituted in its place.
[2] Objection was also made and properly sustained to the testimony going to show that the proceeds of the sale went to pay the debts of the community.
In Levy v. Robson, 112 La. 398, 36 South. 472, where the insolvency of the community was alleged, the court held:
“As to the defense of the insolvency of the community, it is well settled that in a suit, like the present one, for the recovery of the property of the community alienated by the surviv- or in community, the question of the solvency or insolvency of the community cannot be inquired into.”
And in the syllabus of the case of Murphy’s Heirs v. Jurey & Gillis, 39 La. Ann. 785, 2 South. 575, it is said:
“Property acquired during a marriage in the name of the husband is presumed to belong to the community. Nor will such presumption be rebutted by jjroof that he acquired the property with the money of his children by a former-marriage; nor will such fact affect the title of the community to the property, though it may create a debt against it.
“The heirs of the wife become vested with a title to her share of the community property at the moment of her death; and though they receive it subject to the payment of the community debts, they are not bound to await a liquidation of the community before resorting to an action to recover it. Tugwell v. Tugwell, 32 La. Ann. 848, and Glasscock v. Clark, 33 La. Ann. 584, affirmed. Nor in such action, petitory in its character, is the indebtedness of the community or its financial condition dissolved, when a legitimate subject of inquiry.”
And in Glasscock v. Clark, supra, it was held:
“The title to one-half of the community property is vested in the heirs of the deceased wife at the moment of her death, and it is not necessary for them, when they claim it, to .allege that the community is liquidated and solvent.”
*157 [3] On the question of prescription, it was admitted that Mrs. Bostwick, the plaintiff, was born August 24, 1SS7, and was married August 27, 1903, when she was 16 years of age.' She would have reached her majority on August 24, 1908, when the prescriptive term of 10 years would have begun to run and would have been completed on August 24, 1918. This suit was filed on August 2, 1918, and service made on the following day. This was 24 days before the 10 years’ prescription was completed. But it is contended by defendant that Act 224 of 1908, p. 341, which emancipated minors who are married at IS years of age, had the effect of emancipating plaintiff on the day that she arrived at the age of 18 years, say August 24, 1905, nearly three years before the act was passed. This act amends and re-enacts article 382 of the Civil Code and reads as follows:
“The minor, emancipated by marriage, does not need the assistance of a curator in any act or proceeding; provided that whenever a minor emancipated ■ by marriage shall reach the age of eighteen years the said minor shall be relieved from all 'of the disabilities which attach to minors and with full power to do and perform all acts as fully as if the said minor had arrived at the age of twenty-one years.”
That act was approved July 8, 1908, and was promulgated July 17, 1908, and it took effect in Caddo parish 20 days later, which was August 6, 1908, and this suit was filed and service made August 3, 1918. So, if she was emancipated and relieved from all disabilities attached to minors the day the act took effect in Caddo parish, the 10 years’, prescription began to run against her on August 6, 1908, and would have been completed August 6, 1918; but pitation was served in this case on August 3, 1918, 3 days within the 10 years.
Act 224 simply regulates and fixes a personal status. If it had the effect contended for by defendant’s counsel, of emancipating plaintiff on the day she arrived' at the age of 18 years in 1905, she would have been emancipated 3 years before the act was passed; and prescription would have commenced to run against her on account of this change in her personal status 3 years before the act made the change.
“It is a sound rule of construction never to consider laws as applicable to cases arising before their passage, unless the Legislature have, in express terms, declared such to be their intention. Article 8, Civil Code, in which this rule is consecrated, must be construed in withholding from the statute a retrospective operation as having scarcely less force than if re-enacted with the statute itself.” 1 Hennen’s Digest, p. 782.
“Statutes will always be construed as prospective in their operation, unless their language constrains a contrary construction.” New Orleans v. Lloyds, 31 La. Ann. 781.
“Remedial laws are an exception to the general rule and may have retrospective or retroactive force; always whether constitutional or statutory should be construed to operate prospectively only unless the words employed show a clear intention that they should have a retrospective effect.” Cassard v. Tracy, 52 La. Ann. 835, 27 South. 368, 49 L. R. A. 272.
In State ex rel. Knollman v. King, 109 La. 799, 33 South. 776, it is said:
“The rule is that a law will not be given a retroactive operation, unless the intention that it should so operate is so clearly expressed that no other construction is possible (Cassard v. Zacharie, 52 La. Ann. 835, 27 South. 368, 49 L. R. A. 272).”
[4] There is no suggestion in the act in question that it was to have been retroactive in effect. In the absence of such declaration, the law affects rights of persons from the time of its passage; and what is meant by the statement that remedial legislation affecting prescription is retroactive is simply this: That it affects rights and persons already in existence from the time of the passage of the act, and is not confined merely to rights and persons coming under its terms in *159 the future. The statute under consideration is not- a statute of prescription, bht it affects the-personal status of married persons coming within it, declaring that such persons arriving at the ago of 18 years are fully emancipated, To hold that Mrs. Bostwick became emancipated on August 24, 1905, on arriving at the age of 18 years under this law, nearly 8 years before it was passed and became a law, is a legal impossibility. The law took effect upon lier, already over 18, and she became fully emancipated from the day the act became a law in Caddo parish; that is, August 0,190S. The law took effect upon people as it found them.
“Where statutory relief is prescribed for a cause which is continuous in its nature, as a statute of limitations, or desertion for a certain time as a ground for divorce, if the cause continues after the statute goes into effect, the futuro continuance of the cause may bo supplemented by the time it was continuous immediately before the act was passed to constitute the statutory period. No person can claim a vested right in any particular mode of procedure for the enforcement or defense of his rights. Whore a now statute deals with procedure only, prima facie, it applies to all actions, those which have accrued or are pending, and future actions. If before final decision a new law as to procedure is enacted and goes into effect, it must from that time goyern and regulate the proceedings.” Sutherland on Statutory Construction, § 482.
The plea of prescription was properly overruled.
The judgment appealed from is affirmed, reserving to the defendant whatever right he may hAve to sue for any amount, part of the purchase price of the property in question, which may have necessarily gone towards satisfying the debts of the community.