66 So.2d 578

**TAYLOR v. BROWN et al.**

**Nos. 41006, 41046.**

June 1, 1953.

Rehearing Denied July 3, 1953.

Ashton L. Stewart, Baton Rouge, for plaintiff-appellant.

Philip K. Jones, Baton Rouge, for intervenor-appellant.

Benton & Moseley, Baton Rouge, for defendants-appellees.

McCALEB, Justice.

Esther Warren Taylor, one of the surviving daughters of Louis Warren, a colored man who died intestate on November 27, 1945, brought this suit to annul the sale by her father, on April 10, 1945, of a parcel of real estate situated in Square 101 of Suburb South Baton Rouge to another daughter, Thelma Warren Brown, for a stated consideration of $915.69. The conveyance is assailed mainly on the ground that it was, in reality, a donation in disguise violative of Article 2444 of the LSA–Civil Code in that the price paid by Thelma Brown was less than one-fourth of the value of the property at the time of the sale and that, furthermore, it is an absolute nullity under Article 1497 of the LSA–Civil Code because it was a donation omnium bonorum. Alternatively, it is pleaded that, in the event it is found that the purported sale is valid, then collation of the advantage received by Thelma Brown should be ordered under Article 1248 of the LSA–Civil Code inasmuch as the sale was made to her for a very low price.

Irma Warren Nelson, another daughter of Louis Warren, aligning herself with plaintiff, intervened in the suit and prayed for the same relief.

Thelma Brown and her husband, Eddie Brown, who is also joined as a defendant, resisted the claims, contending that the expressed consideration in the deed was adequate and that the conveyance was made for a further consideration, consisting of domestic services performed by Thelma to her father during his lifetime, thus rendering the transfer valid as a remunerative or onerous donation. In the alternative, it was asserted that, should the conveyance be declared null, defendants are entitled to recover from plaintiff and intervenor a sum totalling $16,674.06, representing the value of the improvements made to the property, the expenses incurred by defendants for and on account of the upkeep of the deceased father and recompense for services rendered to him.

After a trial on the merits of the case, the district judge dismissed plaintiff's suit. He was of the opinion that the property was not worth over $2,500 at the time of the sale and that, consequently, the con-

veyance was not a disguised donation as the price was not below one-fourth of its then value. This conclusion was reached after considering the evidence of four real estate experts of Baton Rouge who gave estimates, ranging from $1,600 to $3,500, respecting the value of the property at the time of the transfer.

Subsequently, the judge granted a rehearing and appointed another expert, Mr. C. J. Brown, to appraise the property. In due course, this witness reported that the value of the property in April 1945 was $4,650.38. Upon receiving this appraisal, the judge changed his mind and accepted the valuation of Mr. Brown as correct. But, nonetheless, he decided in favor of defendants, being convinced that the full consideration for the transfer had not been stated in the deed and that Thelma Brown had rendered services to her father during his lifetime which, when added to the consideration stated in the act, far exceeded the sum of $4,650.38, the value placed upon the property by Mr. Brown.

Plaintiff and intervenor prosecuted separate appeals from the adverse decision. The appeals have been consolidated as they present the same issue.

It will be seen from the foregoing statement that the initial question for disposition is whether the consideration for the sale was less than one-fourth of the value of the property at the time of the conveyance—for, as we have stated, the primary attack upon the transfer is that it is viola- tive of Article 2444 of the LSA–Civil Code, which reads:

"The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale".

A careful perusal of the record has convinced us that the judge was originally correct when he concluded that the sale was not a disguised donation inasmuch as the price given was in excess of one-fourth of the value of the property on April 10, 1945. And this, notwithstanding the contrary opinion of the realtor, appointed by the court on rehearing, whose appraisal is far out of line with the estimates of all other experts in the case. Indeed, we wonder why the judge accepted as correct the uncorroborated high value placed by this witness upon the property unless it be that he felt that, since plaintiff's suit must fail because defendants had established an additional consideration for the sale by parol evidence, no harm would ensue by the concession of the matter of value in plaintiff's favor. However, in considering the parol evidence offered by defendants to show an unstated cause, the judge apparently failed to examine the problem respecting the admissibility of this type of proof (timely objection having

been made) which was tendered, not for the purpose of explaining the consideration stated in the act, but for the object of going beyond the recitals thereof and proving an additional consideration.[1] It is, of course, unnecessary that we decide the question of the reception of the testimony in view of the conclusion we have reached.

The evidence shows that Louis Warren built a house in the early 1920s on two lots of ground owned by him, measuring each 40 feet on West Grant Street in Square 101 of South Baton Rouge, which is near Louisiana State University. At that time, Warren and his wife had four children. His wife and one of the children died in 1933 and, in the same year, Jefferson Homestead Association foreclosed a mortgage it held upon the property. However, in 1935 Warren was able to repurchase the premises from the Home Owners' Loan Corporation by assuming the unpaid balance due on his loan with Jefferson Home-

stead Association, amounting to $1,063.50. Following the death of his wife and one of the children, plaintiff and intervenor, the oldest and youngest of the three surviving children, married and left their father's house to live with their respective spouses. However, defendant, Thelma Brown, who was married in 1939, remained with her father on the property until his death in November of 1945. On April 10th of that year, Warren conveyed to Thelma the property in question for the stated consideration of $120 cash and the assumption by her of the balance due on the mortgage to the Home Owners' Loan Corporation amounting to $795.69, or a total of $915.69. At the time of the conveyance, the property fronted on a gravelled street and was not supplied with sewerage by the City of Baton Rouge. Further, the general condition of the house, which contained six rooms, was not good; it was in need of a new roof; the exterior and

1. The question of admissibility of parol evidence tending to enlarge the recitals of an authentic act is not free from doubt. See Articles 2236, 2237, 2238, 2239, 2275 and 2276, of the LSA–Civil Code. Also Articles 1893, 1896 and 1900; Girod v. Vines, 23 La.Ann. 588, Locascio v. First State Bank & Trust Co., 168 La. 723, 123 So. 304 and particularly Robinson v. Britton, 137 La. 863, 69 So. 282, cited with approval in Commercial Germania Trust & Savings Bank v. White, 145 La. 54, 81 So. 753; Bostwick v. Thomson, 149 La. 152, 88 So. 775; Succession of Curtis, 156 La. 243, 100 So. 412; Harris v. Crichton, 158 La. 358, 104 So. 114; Lockwood Oil Co. v. Atkins, 158 La. 610, 104 So. 386; Glover v. Abney, 160 La. 175, 106 So. 735; Hemler v. Adcock, 166 La. 704, 117 So. 781 and Templet v. Babbitt, 198 La. 810, 5 So.2d 13. Compare Brown v. Brown, 30 La.Ann. 966; Dickson v. Ford, 38 La.Ann. 736; Landry v. Landry, 40 La.Ann. 229, 3 So. 728; Guaranty Bank & Trust Co. v. Hunter, 173 La. 497, 137 So. 904 and Citizens Bank & Trust Co. v. Willis, 183 La. 127, 162 So. 822.

woodwork needed paint; the floors were not sanded; the interior required repapering; the galleries were in a state of disrepair; the door and window screens were broken; there was no bathroom equipment or fixtures, no sink or cabinets in the kitchen and the occupants were served by an outside privy. Since their acquisition of the property, defendants have spent considerable money upon its rehabilitation, which includes painting, replacing the roof and other repairs and improvements, costing over $1,300 according to the estimate of Mr. Brown.

In order to show that the value of the property was more than four times greater at the time of the sale than the price paid by the defendants, plaintiff offered on the original hearing the testimony of two real estate men, Mr. A. L. Haase, Jr., and Mr. I. L. McMullen.

Mr. Haase stated that he has been a real estate broker in Baton Rouge for 25 years; that he was familiar with the value of property throughout East Baton Rouge Parish; that he had inspected the property in suit; that its present value (1950-51) was $6,100 and that, on April 10, 1945, the date of the purchase, the lots were worth $900 and the house $2,400, making a total of $3,300.

Mr. McMullen testified that he was in the real estate business, being in the employ of the Hart Estate and that South Baton Rouge Subdivision had been developed by Mr. Hart before his death.

He further stated that he was well acquainted with the value of lots within the vicinity of West Grant Street, where the property in contest is situated; that he had inspected the premises just prior to giving his testimony and believed them to be worth $6,250 in their present condition; that, however, at the time of the purchase in April 1945 the lots had a market value of about $1,000 ($500 each) and the house was not worth over $2,500, making a total of $3,500.

Defendants produced two other real estate men, Mr. Ira L. Alexander and Mr. Clarence E. Morgan. Mr. Alexander testified that the present value of the property was between $3,600 and $3,800 and that, in 1945, situated on a poorly gravelled street without sewerage, the property was not worth over $1,600. Mr. Morgan states that the present value of the property is $3,800 and he agrees with Mr. Alexander that, in 1945, it was not worth over $1,600.

Hence, it is seen from the testimony given at the original trial that, even if the highest estimate ($3,500, given by Mr. McMullen) is accepted, the stated consideration of $915.69 for the transfer of the property was more than one-fourth of its value. But plaintiff attempts to avoid this result by maintaining that the defendants did not prove that they paid the cash consideration of $120 stated in the act, although it is conceded that the mortgage assumed by Thelma Brown has been fully liquidated.

We find no merit in plaintiff's contention as to the cash consideration in view of the uncontradicted testimony of Thelma Brown that her father had been indebted to her in the sum of $120, prior to the sale, as she had made, with her own funds, the homestead payments of $10 per month for a period of 12 months. Accordingly, she avouches that her father, being in ill health and feeling that he could no longer carry the property, agreed to transfer it to her upon her assumption of the balance due on the mortgage and the $120 indebtedness was included in the act as a cash payment.

Since there can be little doubt that payment of the stated consideration of the sale has been shown, there remains for discussion the testimony of Mr. C. J. Brown, who was appointed by the court on rehearing, to appraise the property. He opines that the present value of the property is $7,048.75 and that, in April 1945, it was worth $4,650.38. His appraisal of the lots as of that time is $1,100, or $550 apiece. However, this appraisal does not reflect his own opinion but is founded on information given him by Dr. Irby C. Nicholls who, according to the witness, has dealt extensively with property situated in the South Baton Rouge area for a number of years and on sales of lots within that vicinity during 1949 and 1950, showing that the average lot had a market value of approximately $600. Strangely enough, Mr. Brown does not list the sale of any lots

in 1945 in support of his appraisal, although he includes in his computation one sale in 1948 for $360 of a lot in the adjoining square. In our opinion, the sale of this lot would be more in keeping with the value of the lots before the sewerage and paving were installed. Surely, the value would not be in excess of $500 per lot, the figure given by Mr. McMullen in his testimony.

Mr. Brown appraised the house to be worth $3,550.38 in 1945. This appraisal, however, is shown by Mr. Brown's testimony to be founded upon replacement cost rather than on the value of the house if placed on the market for sale which is, of course, the criterion by which we are to be guided. It thus appears that Mr. Brown's estimate of the value of the house alone is over $1,000 above the appraisal of Mr. McMullen and Mr. Haase and $2,500 over Messrs. Morgan and Alexander.

Considering the opinions of all of the experts, we are impressed with the evidence of Messrs. McMullen and Haase, especially that of Mr. McMullen, who was intimately acquainted with the development of the South Baton Rouge Subdivision and, therefore, in a better position than any of the other realtors to know the market value of the property in 1945. He and Mr. Haase were plaintiff's witnesses and we think they have disproved the charges in the petition that the price paid

for the property was less than one-fourth of its value at the time of the sale.

Disposal of the foregoing leaves for consideration the alternative contention of plaintiff and intervenor that, since the price paid by Thelma Brown was very low in comparison to the real value of the property, the advantage bestowed upon her by her father is subject to collation. Article 1248 of the LSA–Civil Code is authority for this proposition. It provides that when a parent has sold a thing to his child at a very low price the advantage given to the child is subject to collation and the cases of Montgomery v. Chaney, 13 La. Ann. 207; Gonsoulin v. Gonsoulin, 132 La. 737, 61 So. 774; Succession of Lamotte, 110 La. 42, 34 So. 122 and Champagne v. Champagne, 125 La. 408, 51 So. 440, support the proposition that a price less than 60% of the value of the thing is a very low price within the meaning of the Article.

■ Nevertheless, collation is not properly demandable in this suit, which is primarily an action to set aside a sale of a parent to one of his children on the ground that it is a donation in disguise. Collation is not due by Thelma Brown to plaintiff and intervenor at this time; it is an incident to an action for a partition, Lamotte v. Martin, 52 La.Ann. 864, 27 So. 291, and "is made only to the succession of the donor". Article 1242 of the LSA–Civil Code.

■ Article 1227 defines collation as "the supposed or real return to the mass of the succession which an heir makes of property which he received in advance of his share or otherwise, in order that such property may be divided together with the other effects of the succession". Here, it is the advantage that must be collated and it is to be returned to the succession of the donor. Obviously, collation cannot be required until the succession to which it belongs is opened, Baillio v. Baillio, 5 Mart., N.S., 228 and Lamotte v. Martin, supra, and until then the demand is premature. Doll v. Doll, 206 La. 550, 19 So.2d 249; Roach v. Roach, 213 La. 746, 35 So.2d 597; Byrne v. Succession of Byrne, 215 La. 1050, 42 So.2d 699 and Succession of McGeary, 220 La. 391, 56 So.2d 727.

In the last cited authorities, it appeared that the successions had been opened and closed, the heirs having been placed in possession. The rulings were, that, since the parties were no longer coheirs but co-owners, collation could not be demanded among the latter and that, moreover, collation was due only to the succession of the donor. In the instant case, the succession of Louis Warren has never been opened and it is only consonant with the applicable Articles of the Code to require that the claim for collation be presented in the succession proceedings and not be tacked on to this suit, particularly since the alternative demand affects only one

of the two defendants in the case and in view of Thelma Brown's claim that plaintiff and intervenor are liable to her for services she allegedly rendered to their father. We therefore dismiss these claims without prejudice to reurge them in appropriate proceedings.

The judgment appealed from is affirmed.